(84 South. 657)

No. 23509.

PRINCE et al. v. STANDARD OIL CO. OF LOUISIANA.

(May 3, 1920.)

(Syllabus by Editorial Staff.)

1. Appeal and error ⬅187(3) — Failure to join co-owners not considered where not raised below.

In suit to annul oil lease, failure to join all owners as plaintiffs will not be considered on appeal, where the point was not raised by exception or answer, or passed upon in the trial court.

2. Mines and minerals ⬅78(1)—Diligence required in production is that which would be reasonably expected of operator of ordinary prudence.

Where lease does not expressly make either lessee or lessor the arbiter of the extent of diligence required of lessee to prosecute the work of production, the question of whether the required diligence is exercised depends on what would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessee and lessor.

3. Mines and minerals ⬅78(1) — Lessee's duty under provision requiring diligent prosecution of work of production stated.

Where lease required lessee "to prosecute diligently the work of production of oil or gas," lessee could not deal with the premises in its own peculiar interests exclusively, but was required to promote the mutual advantage and profit of the lessor, and, though not bound to work unprofitably for lessor's benefit, it was required, in such event, when refusing lessor's requests to prosecute the work, to abandon the contract.

4. Mines and minerals ⬅78(2) — Lessors held entitled to cancellation of oil lease.

Where lease required diligent prosecution of work of production, and where lessee, after drilling a gas well, refused for four years to drill other wells, lessors were entitled to cancellation, though land had no value as oil property, and there was no market for gas in the territory, and though lessee had paid the annual rent for the gas well as required by the lease; the provision as to diligent prosecution of work being express, and not merely implied.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Suit by Alonzo W. Prince and others against the Standard Oil Company of Louisiana and others. Judgment for plaintiffs, and named defendant appeals. Affirmed.

J. C. Pugh, of Shreveport, for appellant.

Foster, Looney & Wilkinson, of Shreveport, for appellees.

SOMMERVILLE, J. On June 27, 1914, A. W. Prince leased to the Standard Oil Company 349 acres of land in Bossier parish to be developed for oil and gas. Defendant paid $349.50 cash on the date of the lease, and stipulated that the lease might be renewed from quarter to quarter for two additional years by lessee paying to the lessor the sum of $87.38 per quarter.

Subsequently Prince sold the property to W. C. Horton; and on the same day Horton sold to Prince one-third of the minerals in the land. Subsequent to that date Prince sold one-half of his one-third interest in the minerals to T. K. Giddens and the Natalie Oil Company, both of Caddo parish.

In this suit to dissolve the lease because of the failure of the Standard Oil Company to perform its obligations thereunder, Prince and Horton appear as plaintiffs, and Giddens and the Natalie Oil Company, who refused to join plaintiffs, were made parties defendant, together with the Standard Oil Company.

There was judgment in favor of plaintiffs, and against the Standard Oil Company, dissolving the lease, and reserving to defend-

ant the well which it had drilled on the premises prior to the institution of the suit.

[1] It is argued in this court that to annul a lease all the owners must be joined as plaintiffs, and, as Giddens and the Natalie Oil Company do not appear as plaintiffs, that the suit must fail. But no exception was filed in the district court to the right of plaintiffs to sue for the annulment of the lease, and no such defense was set up in the answer. The point was not raised or passed upon in the trial court, and it cannot therefore be heard or considered in this court.

On May 11, 1916, within two years after the signing of the lease, defendant brought in a gas well on the premises of plaintiff; and since that date, up to the filing of this suit June 27, 1918, defendant has made no further effort to develop the property and has refused to further develop it. At the same time defendant refuses to relinquish the lease entered into by it with the plaintiff Prince.

It appears from the evidence that the property was wild-cat territory at the date of the lease, and that it is now considered as gas-producing, and not oil-producing, property.

It was stipulated in the lease that defendant should pay to plaintiff $200 a year for the product of each gas well while the same was being used off the premises. And defendant has paid to plaintiff the sum of $200 per year for the well which it produced while it is using the gas for its own advantage.

Plaintiffs base their action to dissolve the lease on a violation of the following paragraph:

"The party of the second part binding itself, after the discovery of oil or gas in paying quantities, to prosecute diligently the work of production of oil or gas and deliver the one-eighth of the oil as above provided, and the payment of $200 per annum for gas (if a gas well) as above provided."

On the trial of the case the following admissions were made:

"It is further admitted that the defendant company began operations for the drilling of the well on said property on April 25, 1916, and that said well was completed on May 11, 1916, at a cost to defendant of $9,960.82, and that said well is producing gas in paying quantities.

"It is admitted that the defendant has made no effort to develop said property described in plaintiffs' petition since the time of completing the gas well on May 11, 1916, and that the plaintiffs have repeatedly requested defendant to drill said property and have frequently proffered to withdraw the suit if the defendant would drill additional wells on said property."

After admitting that it had drilled only one well upon plaintiffs' property during the four years that it held the lease thereon, and that that well was producing gas in paying quantities, it denies that it has violated the above express obligation in the contract of lease, and insists that the lease cannot therefore be dissolved. It argues that its obligation "to prosecute diligently the work of production of oil or gas," while expressed in words, is really an implied obligation, and that leases will not be dissolved because of failure to perform implied obligations.

In our opinion, the obligation "to prosecute diligently the work of production of oil or gas" is an openly uttered or expressed condition agreed upon by the contracting parties, and stated in words which make it an express obligation. This is particularly so in this case, when there is taken into consideration the testimony produced on the trial, to the effect that defendant is not engaged in the business of the production of gas; that its business is the production of oil; that it could not see anything at the time of the trial that would justify it in drilling additional wells on this Prince land; that "later on conditions may arise where we will want to drill, but cannot now."

The use of a similar term in mineral leases has been usually considered as an express agreement. And, in the recent case of Green v. Standard Oil Co. of La., decided March 2, 1920; 146 La. 935, 84 South. 211, wherein defendant was thus bound and had answered, "said well is of little or no value, either to the plaintiff or to the respondent, and that additional wells could not be drilled without entailing great financial loss on this respondent," the lease was dissolved.

And in the instant case, in its answer, defendant says:

"In answer to this paragraph of plaintiffs' petition, your respondent admits a well was completed on said property as alleged, and that no further wells have been drilled thereon, for the reason that one well was drilled on said property producing gas in paying quantities, and other developments in proximity to said property demonstrated that it had no value as oil property, but that it was valuable for the production of gas, but at the present there is no market for gas in said territory, and for that reason your respondent was not justified, at that time or since, in expending further money in the production of gas, and all of which will be shown on the trial hereof."

[2] Defendant argues that as there is no specific stipulation as to the number of wells to be drilled, that the determination of what is a diligent prosecution of the work of production of oil or gas must be committed to the judgment of the lessee, whose determination, if made honestly and in good faith, is conclusive. We think the better rule of interpretation in a case where the object of the operation is to obtain a benefit for both lessor and lessee is that neither, in the absence of an express stipulation, is the arbiter of the extent of diligence required; both are bound by what would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.

[3] The defendant cannot deal with the leased premises of plaintiffs so as to serve its own peculiar and selfish interests exclusively, unmindful of its obligation to the source from which its authority is derived. Its duty was to promote the mutual advantage and profit of the lessor; and, to excuse the operator, its judgment "must conform to that judgment generally exercised by other operators under similar circumstances and conditions, and in view of the real purpose and intention of the parties when entering into the agreement." Defendant may not be bound to work unprofitably to itself for the benefit of the lessor; but in such event, when refusing to perform the obligations of the contract on repeated requests by the lessors, it should abandon the contract.

[4] In this lease the Standard Oil Company unconditionally and expressly obligated and bound itself, after the discovery of gas in paying quantities, to diligently prosecute work for the production of gas as might be found in the property. Its failure to comply with this stipulation is the violation of an express obligation on its part, and consequently the decision must not be confused with the rulings of this court in cases dealing with the violation of implied obligations. The inexpediency of performing the obligation under the lease is not an excuse for the nonperformance of the terms thereof. And the evidence shows that other oil and gas producers are operating wells in the Bossier field to their advantage.

Defendant pleads an estoppel, based on the fact that it has paid and plaintiff has received the annual rentals for the gas well which it has produced and which it is operating.

It was conceded in plaintiffs' petition that the gas well referred to was the property of defendant so long as it produced gas in paying quantity, and therefore that the stipulated rental of $200 per year was payable as long as defendant kept possession of the well.

In disposing of this point the district judge well said:

"It is very evident that the drilling of the first gas well was not a compliance with defendant company's expressed obligations to develop plaintiffs' property for oil or gas with diligence after the discovery of oil or gas in paying quantities. How, then, can the payment of rentals on this well and the receipt of these rentals by plaintiffs after the defendant company has been put in default operate as an estoppel of plaintiffs' right to sue for the rescission on the ground that defendant company has violated its expressed obligation to drill additional wells if the first well proved successful? * * *

"If the contention of defendant company is correct, then it could avoid drilling any of the wells it might obligate itself to drill except the first well, by paying the rentals on the first well after being put in default as to the second well, although it was defendant company's duty to pay these rentals."

The judgment appealed from is affirmed.