(98 South. 862)

No. 24636.

## LOUISIANA LIVE STOCK & PLANTING CO. v. KENDALL et al.

(Nov. 5, 1923.   Rehearing Denied by the Whole Court Jan. 28, 1924.)

*(Syllabus by Editorial Staff.)*

1. Mines and minerals ⬤78(5)—Estoppel to take advantage of failure to operate existing well held no bar to cancellation for breach of other conditions of lease.

In a suit to cancel an oil and gas lease for failure to operate an existing well and for other reasons, that lessor had received royalties from the well could not operate as an estoppel, or affect his right, to sue for cancellation for failure to comply with other obligations of the lease.

2. **Mines and minerals ⊕⟶78(5)—Acceptance of royalties held not to affect forfeiture of oil lease.**

In a suit to cancel an oil and gas lease, where defendant lessee pleaded estoppel by acceptance of royalty payments on an existing well, the right to declare a forfeiture was not thereby affected, where it appeared that such payments were made after the acts of forfeiture were committed and the right to avoid the lease had accrued.

3. **Mines and minerals ⊕⟶78(2)—Oil lease construed as to forfeiture clause.**

Where an oil and gas lease provided that the lessee was to drill a well, and if such well was a nonproducer the lessee should have the right to make as many attempts within 12 months to drill a well as he pleased, but that such operations should be successive in that not more than 60 days should elapse between the abandonment of a dry hole before commencing another, and if no producing well was drilled on said premises "or commenced on said premises" within 12 months all rights under the lease should be terminated, *held*, that the commencement of a well within the year would not avoid forfeiture, but that the lease required that a well should be actually drilled within the 12 months.

4. **Mines and minerals ⊕⟶78(5)—Right to declare forfeiture of oil lease held not waived.**

In a suit to cancel an oil and gas lease for failure to comply with its provisions for drilling a well within the time stipulated in the lease, letters written after the expiration of the period allowed for such drilling extending the time *held* not a waiver of the lessor's right to declare a forfeiture.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Jr., Judge.

Action by the Louisiana Live Stock & Planting Company against H. Kendall and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Thomas W. Robertson, of Shreveport, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. On the 1st day of April, 1919, the plaintiff executed in favor of E. J. Scott an oil and gas lease upon certain lands situated in Caddo parish which are fully described in the petition. By intervening successive assignments, all of the rights of Scott passed to the defendants H. Kendall and R. J. Dixon. There was a well already located on the land, and the lessee Scott obligated himself to begin operating that well and saving and transporting the oil produced therefrom within 90 days. It was provided that the grantor might give the lessee 30 days' written notice to commence operations on the well mentioned, and on failure to do so within 30 days after the notice, all rights of the lessee under the lease were to be forfeited.

It is conceded that no notice was given by the grantor as required, and that part of the plaintiff's action to cancel the lease necessarily fails.

The matter is mentioned because the lessee did operate the existing well to some extent, and the plaintiff signed a division order to the Standard Oil Company under which plaintiff received royalty payments from said well for several months; and this act on the part of plaintiff is made the basis of a plea of estoppel against plaintiff's action to cancel the contract for any other cause that may be set out in the petition. The covenant of the lessee to open up and operate the existing well was independent of the other obligations on the part of the lessee to develop the land by drilling other wells. Even, therefore, if the lessee had fully complied with the obligation to operate the existing well, he would not thereby have been relieved from the forfeiture resulting from a failure to drill a well within the time as stipulated.

[1] The receipt by the plaintiff of the royalties from the well the lessee was required to operate as one of the considerations of

the lease could not possibly operate as an estoppel, or in any manner affect the plaintiff's right to sue for cancellation for the failure to comply with other obligations of the lease. Prince v. Standard Oil Co., 147 La. 283, 84 South. 657.

[2] But more than this, the plaintiff alleges that the division order was signed May 1, 1920, and the royalty payments were received by the plaintiff during the months of July, August, and September, 1920. This was after the forfeiture of defendant's rights under the lease, if, as a matter of fact, there was a forfeiture, and after the plaintiff's right to avoid the lease had accrued, if any such right existed. The act of the plaintiff under the circumstances constituted no estoppel, nor did it have the effect of waiving a breach of the lease nor of extending the time of performance.

The more serious question—in fact, the only question in the case—involves the interpretation of the second clause of the contract of lease pertaining to defendant's obligation to drill, and whether he had complied therewith. The clause is as follows:

"2. The said Scott binds and obligates himself to drill one well on said premises to the usual depth of oil or gas wells in said field within twelve months from this date, and on his failure to do so all of his rights hereunder shall cease and determine; provided that if said well to be drilled hereunder is a nonproducer then the said Scott shall have the right to make as many attempts as he pleases within said twelve months' period to drill a well for oil or gas, but such operations shall be successive in that not more than sixty days shall elapse from the abandonment of a dry hole before commencing another well, and provided further, that if no producing well is drilled on said premises or commenced on said premises within twelve months from this date, then all of the rights of the said Scott herein shall ipso facto determine."

The apparent confusion and difficulty arises from the words, "or commenced on said premises," appearing in the concluding part of the clause. Omitting the words mentioned, there is no ambiguity in the clause, and there could arise no controversy as to the obligation of the lessee. He bound and obligated himself to drill one well to the usual depth of wells in that field, and to do so within 12 months under a penalty of forfeiture of all rights under the lease. If that well was a nonproducer, the lessee had the right to make as many attempts as he pleased to drill a well, providing that these attempts were successive; that is to say, that not more than 60 days should elapse from the abandonment of a dry hole. These attempts, however, were to be made all within 12 months from the date of the lease under a penalty of a forfeiture of all rights under the lease.

[3] It is argued by the able counsel for the defendant that under the concluding part of the lease clause under consideration, the words, "or commenced on said premises," must control in interpreting the contract, and that under such construction, a well commenced within the year would answer the terms of the contract and avoid a forfeiture. We cannot agree with counsel. The clause must be considered as a whole, and contradictions or seeming contradictions in the terms must be harmonized, if possible, in order to ascertain the intent of the contracting parties. As was said in Glassell v. Richardson Oil Co., 150 La. 1007, 91 South. 434:

"A construction which entirely neutralizes one provision of a written instrument should not be adopted if the contract is susceptible of another, which gives effect to all of the provisions."

The entire clause at issue on its face shows, not that the drilling of a well should commence within 12 months, but that one well should be actually drilled on the land within 12 months, and if this well so drilled, within the period specified, proved to be a dry hole, then the lessee was at liberty to

make other attempts at drilling; but such attempts were required to be made within the 12 months.

Having determined and agreed that one well should be drilled within 12 months, and if that proved to be a dry hole, any further attempts should be made within the 12 months, it is hardly possible that the parties intended to destroy entirely that agreement as to time, which was of the essence of the contract, by adding at the end of the clause the words, "or commenced" within 12 months from date of the contract.

To give to the clause the construction contended for would write out of the contract all that part which required, not only that a well be drilled on the land within the year, but that any other attempts to drill, in case the first well drilled turned out to be a dry hole, should be within said period of 12 months. This is, in our opinion, the only reasonable interpretation to be given to the language used in the clause when considered as a whole. We think the construction of counsel for plaintiff is correct, that the concluding part of the clause, "or commenced on said premises within twelve months," referred to those wells which "were to be drilled or commenced within the twelve-month period after the first well had been brought in as a dry hole." This construction harmonizes with and gives effect to the entire clause, whereas the construction contended for by defendant would defeat the purpose and intent of the parties.

There is no pretense that a well was drilled by defendant within the 12 months. And it is virtually admitted that no effort was put forth and no attempt at drilling was made until within the week preceding the expiration of one year from the date of the contract. The well thus commenced, as admitted by counsel on both sides, was only completed after trial in the lower court, and proved to be a dry hole.

On April 3, 1920, two days after the expiration of the time limit in the lease, the plaintiff wrote defendants in part as follows:

"Under our construction of this lease it was necessary as to the first well drilled on it, to complete same within a year, which has not been done and we consider the lease at an end. However, we have no desire to be technical in the matter and inasmuch as you have erected a derrick on same prior to the expiration of the year, we are willing to hold our rights in abeyance, provided you will use reasonable diligence in rigging up this well and drilling it in the proper manner. If you do this we will be willing to waive any rights we might have to cancel the lease and let it stand, but if this work is not carried on with proper diligence from this time on we shall certainly take the necessary steps to cancel the lease. This letter is not to be considered in any way as a waiver of our rights."

On June 22d plaintiff again wrote defendants complaining of their failure to prosecute the drilling with reasonable diligence. And again a similar letter was written on August 18th in which plaintiff said:

"We are very sorry to advise that there are no apparent indications that you are taking any steps towards completing the well which you have started."

[4] The defendants did not reply to any of these letters, nor did they offer any explanation for their failure to carry on the drilling or to comply with the conditions exacted in the letters. The letters merely granted an indulgence to the defendants on certain conditions which were not complied with, and these letters could in no sense be held as a waiver of plaintiff's rights to cancel the lease, nor as granting an extension of time for complying with the terms of the lease.

The authorities cited by defendants to the effect that there can be no forfeiture for a violation of an implied covenant, unless the lease expressly so provides, have no application. There is no question of an implied obligation. The lessee expressly bound himself to drill a well within the year, and the

lease expressly declared that all rights under the lease would be forfeited if the drilling was not done as stipulated.

The defendants have by their failure forfeited all rights under the lease, and the same should be canceled. Not having complied with the terms of Act 168 of 1920, the plaintiff is not entitled to recover attorney's fees as provided for in said act.

The judgment appealed from is annulled, reversed, and set aside; and it is now ordered and decreed that there be judgment in favor of plaintiff and against the defendant, canceling and declaring forfeited, and· null and void the mineral lease executed by the plaintiff to E. J. Scott of date April 1, 1919, and later assigned to the defendants herein.

It is further ordered that the defendants pay all costs of both courts.

Rehearing denied by the WHOLE COURT.