196 So. 912

**SMITH et al. v. TULLOS et al.**

No. 35306.

May 27, 1940.

Barksdale, Bullock, Clark & Van Hook, of Shreveport, for appellants.

Foster, Hall, Barret & Smith and Hollingsworth B. Barret, all of Shreveport, for appellee Interstate Drilling Co., Inc.

O'NIELL, Chief Justice.

This is a suit to annul an oil and gas lease on the ground that it was abandoned by the lessee. The district court, after hearing the evidence, rejected the plaintiffs' demand. They are appealing from the decision.

The plaintiffs leased the land to A. G. Tullos and he assigned the lease to the Interstate Drilling Company, a few days afterwards. Tullos and the Interstate Drilling Company are the defendants in the suit. The lease is on 110 acres of land in wildcat territory. The cash consideration was $25, and the primary term of the lease was five years, subject to the condition that if drilling operations should not be commenced within thirty days the lease would terminate as to both parties. The contract contained the usual stipulation for the one-eighth royalty. It was made on a printed form, called "Bath's Form 14—A—Revised". But it was agreed that the printed clauses providing for the payment of an annual rental for delay in the commencement of drilling operations should be deleted from the contract. The attorney who struck out these clauses overlooked and neglected to strike out the last two sentences on the subject, namely, the provision for commencing the drilling of another well in the event of the drilling of a nonproducer, and the provision for commencing additional drilling operations within sixty days in the event that a producing well should be brought in and should afterwards quit producing. The Interstate Drilling Company, therefore, in its answer to this suit, set up a reconventional demand to have the contract of lease reformed by striking out these two sentences which the parties intended to strike out. The judge allowed the reconventional demand and, in his decree, reformed the contract by deleting the two clauses which the parties had agreed to delete, and which the attorney overlooked when he undertook to strike out all of the clauses relating to the drilling of wells other than the test well which was to be drilled within the thirty days from the date of the contract.

It is admitted by the plaintiffs that it was agreed by all of the parties to the lease that all of the clauses relating to the drilling of other wells after the drilling of the test well that was to be commenced within thirty days from the date of the contract were to be stricken out of the printed form; and it is admitted that the failure to strike out the last two sentences on the subject was the result of an oversight on the part of the attorney who prepared the contract. That being true, it would seem inconsistent to hold that there remained an implied obligation on the part of the lessee to continue the drilling of wells after the test well was completed as a nonproducer. Within the year in which the test well was drilled the lessee went back and reworked it in an effort to make it a producer. This suit was filed about three months after the lessee quit working on the well. There was no implied obligation on the part of the lessee to commence drilling another well within that time. An implied obligation in a contract cannot exist when there is an agreement that there shall be no such obligation. The agreement of the parties to the contract in this instance, to delete the printed clauses requiring the lessee to drill other wells after completing the test well, was, virtually, an agreement that there should be no such obligation on the part of the lessee.

Counsel for the appellants cite Thornton's Law of Oil and Gas, 4th Ed., Vol. 2, Sec.

856, pp. 1612 and 1613, where it is said that a lessor has a right of action to cancel the lease, as a cloud upon his title, if the lessee drills an unproductive well and then abandons the lease by ceasing for an unreasonable time to explore the premises or operate the wells. But the decisions cited by the author to support his text are distinguished readily from the present case. In some of the cases cited there was a breach of an express covenant, and in the other cases oil or gas was discovered on the leased premises, and hence there arose an implied covenant for a reasonable development by the lessee for the mutual protection and benefit of the lessor and lessee. That was true in the two Louisiana cases cited by Judge Thornton, namely: Green v. Standard Oil Co., 146 La. 935, 84 So. 211, and Prince v. Standard Oil Co., 147 La. 283, 84 So. 657. But the converse of the proposition befits this case. It is stated in Nabors v. Producers' Oil Co., 140 La. 985, 986, 74 So. 527, L.R.A.1917D, 1115, thus:

"When the lessee of a tract of land for the production of oil and gas has paid an adequate consideration in cash, and has complied with the only obligation expressly required of him during the first year after the signing of the contract, by the drilling of one test well, and has not found oil or gas in paying quantities, the grantor [lessor] is not entitled to a cancellation of the lease on the ground that the lessee failed to perform an implied obligation to drill more than one well for the common advantage of the lessor and lessee."

■ The cash consideration which the lessee paid in this instance was only $25; but that was the price for which the lessee acquired only the option to drill a test well within thirty days and thereby to acquire a lease for the term of five years. We do not doubt that $25 was an adequate consideration for such an option on only 110 acres of land in wildcat territory. But, when the option was carried out by the drilling of the test well within the time stipulated, the price that was paid for the option became a matter of no importance. The consideration that was given for the five-years lease was the drilling of the test well, which cost approximately $4,200. That was an adequate consideration, notwithstanding the test well was unproductive. It was the hope or prospect of finding oil or gas in paying quantities that made the drilling of the test well worth its cost to the contracting parties. That was an adequate consideration in their judgment; and although it proved to be only a vain hope it was a valid consideration. Rev. Civ.Code, art. 2451.

■ The plaintiffs filed a supplemental petition in which they alleged that it was contemplated by the parties to the lease that the test well which was to be drilled within thirty days was to be drilled to what is known as the Woodbine stratum,—a depth of approximately 2,400 feet; and it was alleged that the stipulation to that effect was omitted from the contract by error and inadvertence. The well was drilled to the depth of 1,653 feet, into a recognized oil stratum called the Chalk Rock stratum.

The evidence shows, and it is not disputed, that that was a reasonable depth to which to drill a test well at that time. The complaint made in the supplemental petition, however, is virtually withdrawn; for it is declared in the brief for the appellants that the only question presented for decision in this case is whether the lessee's drilling under an option an unproductive well, and then abandoning the leased premises, is a sufficient cause for the lessors to demand an annulment of the lease. In fact the lessee, or assignee of the lease, did not abandon the leased premises, but merely abandoned work on the unproductive well, and reserved the right to drill other wells at any time before the expiration of the five-years term of the lease.

The judgment is affirmed.