1 So.2d 518

**LOUISIANA GAS LANDS, Inc., v. BURROW et al.**

No. 35743.

March 3, 1941.

Rehearing Denied March 31, 1941.

Dhu Thompson, of Monroe, for appellant.

Sholars & Gunby, Frank O. Looney, and Madison, Madison & Files, all of Monroe, for appellees.

ROGERS, Justice.

This is a suit for the cancellation of an oil and gas lease and for damages, with an alternative prayer for cancellation of the lease and damages, after due notice and a reasonable delay, and in the further alternative, for the payment of a four instead of a three cent royalty. Plaintiff's action is predicated on the alleged failure of the lessee to produce gas in reasonable quantities from two wells located on eighty acres of land owned by plaintiff and from which, with the exception of a small interest, plaintiff receives a one-eighth royalty.

After their pleas to the jurisdiction, exceptions of vagueness, and motions for bills of particulars were overruled, defendants filed exceptions of no right of action and no cause of action. The exception of no right of action was overruled, but the exception of no cause of action was maintained and plaintiff's suit dismissed. Plaintiff appealed, and defendants, answering the appeal, ask that the

judgment be affirmed so far as it maintains the exception of no cause of action, but that it be reversed so far as it overrules the exception of no right of action. They ask, in the alternative, in the event both their exceptions should be overruled, that their pleas of vagueness and motions for bills of particulars be sustained.

We do not find it necessary to consider the exception of no right of action since we have reached the conclusion that the judgment maintaining the exception of no cause of action is correct.

The essential averments of the petition, which is extremely lengthy, are as follows:

Plaintiff alleges that it owns the NE¼ of the NE¼ of Section 36, Township 21 North, Range 3 East, and an undivided eight-ninths interest in the NW¼ of the NW¼ of Section 31, Township 21 North, Range 4 East, and that the remaining one-ninth interest in the last mentioned forty acres is owned by L. W. Burrow and J. C. Johnson, who are impleaded as parties defendant.

Plaintiff alleges that the oil and gas lease, dated November 10, 1921, granted by its predecessor in title, is now owned by the defendant, Union Producing Company, under the assignments from the original lessee.

Under the provisions of the lease, the lessee is obligated to pay as royalty one-eighth of the proceeds of all gas produced and marketed, or used from any well drilled on the land subject to a specified minimum of two cents per thousand cubic feet and a maximum of four cents per thousand cubic feet. The petition alleges the completion of two gas wells on the leased property, one designated as Stevens No. 1, on January 9, 1927, the other designated as Stevens No. 2, on July 24, 1931, and sets out details of figures showing rock pressure, open flow and legally allowable production of each of the wells. The petition also alleges that the defendant mineral lessee owns and operates numerous oil and gas leases in the Monroe Gas Field, including the gas producing territory in the Parishes of Ouachita, Morehouse, Union, and Richland, and in various other gas fields in this and in other states. That they also own numerous oil, gas, and mineral rights and contracts of land in fee simple in those fields and a number of pipe lines for gathering, transporting, and distributing of gas in and out of this state, together with a number of purchase and sale contracts for gas.

Plaintiff alleges that during the years 1937 and 1938 the defendant lessee pulled from its two wells approximately 4% of the allowable production fixed by law and for the first seven months of the year 1939, it pulled about 10% of the allowable production for the wells. During the same period, the defendant lessee and other operators took in excess of the allowable production from other wells in the field.

Plaintiff avers that the defendant lessee, and the former owner of the lease has and have ample facilities and market to produce and take from its wells a fair and reasonable amount of their capacity.

Plaintiff alleges that the defendant lessee and the former owner of the lease have permitted, and are permitting, drainage of the land on which the gas wells are located to the detriment and loss of the plaintiff and have willfully discriminated against the plaintiff in the production and marketing of the gas from the Monroe Gas Field.

The petition alleges that since the early part of 1937 the defendants have not produced and marketed any appreciable amount of gas from the wells, considering the amount of gas produced and marketed from other wells of comparable production and allowable capacity in the field and territory. The petition sets forth that plaintiff has made repeated protests and demands upon the defendant lessee and its predecessors in title, to take and produce from the wells a fair and reasonable amount of gas; that the defendants have willfully and deliberately neglected and refused to pull and produce gas from its wells in paying quantities considering the value and capacity of the wells, or to release the wells and cancel the lease, or to do anything whatever to protect plaintiff against discrimination, drainage, and unfair treatment and loss.

Because of the alleged failure of the defendant lessee and its predecessors in title to operate the two gas wells during the years 1937, 1938, and 1939, so as to protect plaintiff's rights, plaintiff claims that it is entitled to a cancellation of the lease and the value of the royalty which plaintiff would have received during the period mentioned had defendants pulled the wells on a par with other wells in the field.

In the alternative, plaintiff claims damages because of the failure of the defendants to protect plaintiff against drainage and because of defendants' failure to produce and pull the wells since the first of 1937, to the amount claimed as damages in this suit. In the second alternative, plaintiff avers that it is entitled to the damages mentioned in the first alternative and to such further damages as may accumulate by reason of defendants' failure and neglect to fairly and properly operate the wells, and upon defendants' failure to so operate and produce gas from the wells after a reasonable time, in addition to the damages, to have the lease cancelled. In the third alternative, plaintiff contends that the gas from the wells should be paid for at the rate of four cents per thousand cubic feet. In the fourth alternative, plaintiff asserts its rights, in any event, to have all gas or royalty produced from the wells and land paid for on the basis of the maximum price fixed in the contract. The prayer of the petition is in accordance with its allegations.

Plaintiff's principal complaint, stated in its simplest terms, is that the lease contract has been breached in two respects, namely, by the failure of the defendant lessee and its predecessors in title to operate the lease properly, and by their permitting drainage of the leased premises.

Plaintiff does not claim that the defendant lessee or its predecessor in title has violated any express obligation of the lease

contract. The basis of plaintiff's claim, as disclosed by the allegations of its petition, is that the alleged failure of the lessee and its predecessor to operate the lease in the manner and during the period complained of constitutes a violation of an implied obligation on the part of the lessee and its predecessor. Plaintiff's contention is, as stated in its brief, that Act No. 252 of 1924, fixing the maximum allowable of each gas well (based on rock pressure, open flow, and the acreage on which the wells were drilled) forms the legal and a fair basis for a computation and comparison of the pull given a well with other wells in the field or territory, and especially in a suit where willful discrimination is charged.

Plaintiff argues that Act No. 252 of 1924 is, in a sense, a proration law, on which the production capacity of each gas well is fixed and to be modified from gauge to gauge, and plaintiff's allegations are, therefore, made on the basis of the capacity of the wells as fixed under the legislative act.

■ As disclosed by its title, Act No. 252 of 1924 is "An Act to conserve the mineral resources of the State of Louisiana." The statute begins by enacting "that natural gas shall not be produced in the State of Louisiana in such manner, and under such conditions as to constitute waste." As an incident to its primary purpose of conservation and to prevent waste, the statute limits the percentage of open flow capacity of gas wells that may be taken therefrom, and fixes the maximum of such percentages. The statute represents a law of conservation and not of proration. It is a law of prohibition or limitation and

not of obligation. The amount of production allowed by the Commissioner acting under the provisions of the statute is a permissible, not a mandatory amount.

■■ Since plaintiff's allegations under its own interpretation are made on the basis of the capacity of the wells fixed under the act, we think it fails to state a cause of action. Under the provisions of the statute there is no obligation resting upon the mineral lessee to take the allowable production from plaintiff's wells, nor does the lease, either expressly or impliedly, impose upon the lessee any such obligation.

With this point disposed of, nothing is left in plaintiff's lengthy petition save the allegations that, over a period of thirty-one months from an offset well owned by the Interstate Natural Gas Company, a nearby well owned by the Southern Carbon Company, and two wells in the same section owned by the Southern Carbon Company, production has been had varying from 88% to 100% of the allowable production, and in each case in larger amounts in cubic feet than that produced from plaintiff's wells. These allegations do not constitute allegations of fact showing any violation of the lessee's implied obligation to reasonably and fairly operate the leased property to the mutual profit and advantage of both the contracting parties.

■ It would seem to be clear that plaintiff is entitled to the benefit of production from its land, which production should be equal to the proportion of the total production of gas from the field, to be determined by the percentage the eighty-

acres of land owned by plaintiff bears to the total acreage embraced in the field.

■ If plaintiff, through the many years during which the lessee has produced gas from plaintiff's lands, has received the benefit of a total quantity of production equal to, or exceeding, plaintiff's fair share of the total production from the common reservoir of the entire field, it can not be successfully contended that plaintiff has not received its fair share of the total production, even though, for a particular term during a specified period of time, the production from plaintiff's lands has not proportionately equalled the production of nearby lands, or lands in the same section.

■ The rule which imposes the implied obligation upon a lessee to operate the leased premises to the mutual profit and advantage of both parties to the contract can not be invoked so as to erase entirely from the contract those provisions which expressly declare that the lessee's rights shall continue so long as gas is produced in paying quantities. It is only by a narrow construction it could be held the implied obligation in question requires that the same quantity of gas or percentage of allowable should be produced from each of plaintiff's wells as that produced from some other wells located nearby, in the same section, or elsewhere in the field. This would seem to be especially true where the lessee is complying with its express obligation of producing gas in paying quantities and in the absence of any well-pleaded facts showing that the pro rata share of gas has not been, and is not being, produced from plaintiff's eighty-acre tract.

■ It is true the petition contains the allegation that "defendant has willfully and deliberately neglected and refused to pull and produce the gas from petitioner's wells in paying quantities." But that allegation represents only a conclusion of the pleader and it is inconsistent with other allegations of the petition showing that the production of gas from the leased premises during the period referred to in the petition was not so scant as to deprive plaintiff of a reasonable return under the lease.

■ Plaintiff's allegations that there has been drainage of its lands to its prejudice are also merely conclusions of the pleader and disclose no cause of action. Specific facts should be pleaded to support those allegations. Hart v. Standard Oil Company, 168 La. 183, 121 So. 737.

The petition does not state any fact which could serve as a basis for its general charge that plaintiff's lands have been subjected to prejudicial drainage, nor does the petition state any fact by which the extent of the drainage, if any, could be established. A fair reading of the many articles and numerous allegations contained in the petition discloses that the whole theory of plaintiff's demand relates to the alleged failure of defendants to produce and market the full allowable amount of gas from its wells, or some unstated percentage thereof, and that this constituted a breach of defendant's implied obligation to reasonably operate the wells to their mutual profit and to protect the leased premises against drainage.

Our conclusion is that the petition as written does not contain sufficient allegations of issuable fact to furnish a basis upon which any judgment may be rendered. It may be that plaintiff can set forth a cause of action for some character of relief by pleading the necessary facts, but in order to do this an entirely new suit will be required.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.