14 So.2d 445

## GENNUSO v. MAGNOLIA PETROLE-
## UM CO.

No. 36925.

May 17, 1943.

Rehearing Denied June 21, 1943.

Liskow & Lewis, of Lake Charles, for defendant and appellant.

Pavy & Pavy, of Opelousas, for plaintiff and appellee.

Griffin T. Hawkins, of Lake Charles, amicus curiæ.

HIGGINS, Justice.

The land owner instituted this action to dissolve and cancel an oil and gas lease owned by the defendant on 184.59 acres of land in the Eola Oil Field located in Avoyelles Parish on the ground of alleged failure to comply with the implied legal obligation to develop the property with reasonable diligence.

The defendant denied the allegations of the petition and averred that under the facts and circumstances set forth in its answer, the law did not require it to further develop the property at this time because a reasonably prudent operator would not undertake additional drilling.

After a trial on the merits, the district judge under a special clause of the lease maintained its effectiveness on 25 acres where the producing well is located but cancelled the lease on the balance of the land.

The defendant alone appealed.

The plaintiff has not answered the appeal and now concedes that the judgment of the trial court is correct in upholding the lease in so far as 25 acres are concerned.

° The record shows that O. Q. Foster, as owner of the land in question, granted an oil and gas lease to Winston L. Stokes on August 13, 1935, containing the usual clauses and providing that it could be kept legally effective during the primary term of five years upon the payment of annual rental in the sum of $180 in lieu of operations on the property. It was also pro-

vided that upon the discovery of oil or gas, the lease would remain in force as long as " * * * oil, gas or other mineral is produced from said land * * * " thereunder. Winston L. Stokes, on the same day, assigned the lease to the Magnolia Petroleum Company, the defendant herein. O. Q. Foster, the land owner, at the time of granting the lease to Stokes, also conveyed to him a one-fourth interest in his mineral rights in the land, including one-fourth of the royalties accruing under the lease. On the same date, Foster also conveyed a similar one-fourth interest in his mineral rights to C. F. Sentz. More than a year later, or on December 4, 1936, Foster sold the land to the plaintiff, Frank Gennuso, subject to the previously recorded lease and mineral grants and the vendor reserved to himself one-half of the remaining royalty rights, the vendee acquiring title to the land and also one-fourth of the royalties accruing under the existing lease. The present suit was brought by Gennuso only, the other mineral owners did not join him and were not made parties defendant.

On April 9, 1940, the defendant drilled and completed an oil well on the land producing over one hundred barrels of oil per day. From April 9, 1940 to December 5, 1941, when this suit was filed, the well produced the maximum daily amount allowed by orders of the Louisiana Conservation Commission, the production averaging one hundred twenty-one barrels of oil per day. The well was still producing the maximum allowable when the case was tried.

On March 19, 1941, the plaintiff and his attorney sent a registered letter to the defendant making formal demand that it carry on additional drilling operations, otherwise the defendant would be considered as having breached the lease and defaulted thereon and suit would be instituted for the dissolution and cancellation of the lease contract.

On April 4, 1941, the defendant, in reply to the above demand, stated that it would "conduct further development when conditions were such as would permit a reasonable prudent operator to do additional drilling." When further operations on the property were not begun, this suit was filed on December 5, 1941.

Up to December 1, 1941, the defendant had expended on the property, in developing it, the sum of $70,781.84, and had produced oil that had a total value of $85,985.88, $10,748.24 of which had been paid to the owners of the one-eighth royalty. Instead of the production decreasing, it had increased and at the time of the trial, the royalty owners were receiving royalties at the rate of about $500 per month.

Phillip H. Jennings, employed by the defendant for more than six years and who holds a Doctor's degree in Geology from Columbia University, New York, and has had extensive experience in the oil industry since 1923, after reciting in detail the geological information obtained about the land in question and the Eola Oil Field, stated he did not think that under the facts and circumstances as they existed at that time a prudent operator would

drill another well on the plaintiff's property to the same strata from which the present well is producing. He also stated that a prudent operator would not drill a deep test well on the property at the present time, because the geological information obtained from another unsuccessful test well in the field indicated that would not be the reasonable thing to do.

The plaintiff offered no countervailing proof.

In the case of Louisiana Gas Lands, Inc., v. Burrow et al., 197 La. 275, 1 So.2d 518, 521, the court said: "The rule which imposes the implied obligation upon a lessee to operate the leased premises to the mutual profit and advantage of both parties to the contract can not be invoked so as to erase entirely from the contract those provisions which expressly declare that the lessee's rights shall continue so long as gas is produced in paying quantities. * * *" See, also, Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473.

In the instant case, aside from the uncontradicted expert testimony that a prudent operator would not attempt to drill additional shallow or deep wells at this time, it will be observed that at the time the suit was filed the defendant had just about recovered the amount of capital expended in drilling the well, Foster No. 1

and the royalty owners had received very nearly $11,000 in royalties. The plaintiff had received in royalties practically one-half of the purchase price of $5,000 for the fee-simple title to the whole tract of land.

Under the foregoing facts and circumstances, it is our opinion that there has been reasonable and prudent development of the land and therefore the plaintiff is not entitled to the dissolution and cancellation of the lease.

Counsel for the plaintiff relied on the case of Prince et al. v. Standard Oil Company of Louisiana, 147 La. 283, 284, 84 So. 657. In that case the plaintiff was receiving only $200 per year on the gas well and there was an express provision covering the development of the land in question. He also cited Caldwell v. Alton Oil Co., Inc., 161 La. 139, 140, 108 So. 314, wherein the well produced about five barrels of oil per week and the royalty payments amounted only to $33.33 per year. A mere statement of the facts in those cases shows that they are not in point here.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is annulled and set aside, and it is now ordered that the plaintiff's suit is dismissed at his costs.

ODOM, J., absent.