407 So.2d 59 (1981)
Roland VEAZEY and Dora Choate Veazey, Plaintiffs & Appellants,
v.
W. T. BURTON INDUSTRIES, INC., Defendant & Appellee.
No. 8483.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearing Denied January 4, 1982.
Writ Granted February 19, 1982.
Simon & Dauterive, J. Minos Simon, Lafayette, for plaintiffs & appellants.
Camp, Carmouche, Palmer, Barsh & Hunter, A. J. Gray, III, Lake Charles, for defendant & appellee.
Before CULPEPPER, CUTRER and LABORDE, JJ.
CULPEPPER, Judge.
Plaintiffs are the alleged owners of a tract of land in Vermilion Parish. Defendant is the alleged former owner of an oil, gas and mineral lease affecting that tract. Plaintiffs seek damages alleged to have been sustained by them as a result of defendant's "negligent breach of contract." The trial judge sustained defendant's exception of no cause of action and dismissed plaintiffs' suit.
The issue is whether plaintiffs' petition alleges a cause of action for damages either for breach of contract or in tort. We conclude, as did the trial judge, that regardless of whether plaintiffs allege a breach of a contractual obligation or of a duty in tort, there is no cause of action because the allegations as to damages are too speculative.
At the outset, we recognize the rule that when a party has been damaged by the conduct of another arising out of a contractual relationship, he may have two remedies, one in tort and another in contract, and he may elect to recover under either. Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 263 So.2d 871 (1972). Thus, if plaintiffs in the present case have stated a cause of action in either tort or contract, the exception of no cause of action must be overruled.
Of course, we also recognize the rule that when considering an exception of no *60 cause of action, all well-pleaded facts must be accepted as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (La.1961).
FACTS ALLEGED BY PLAINTIFFS
In their petition filed on July 10, 1979, plaintiffs allege they are owners of 105.5 acres in Vermilion Parish; that in 1964 they executed an oil, gas and mineral lease to Perry H. Coleman; that this lease was subsequently acquired by W. T. Burton Industries, Inc.; that in 1965 Burton drilled "Roland Veazey No. 1 Well" on the property; that Burton drilled the well to a depth of 18,000 feet and set casing to a depth of 13,429 feet; that during the drilling Burton discovered two high-pressured gas zones, one at 14,675 feet and the other at 14,800 feet, and that verification of these gas zones was made by Schlumberger Electrical Logs and by core or sidewall samples, which were analyzed by Core Laboratories, Inc. and determined to be gas productive; that rather than produce the gas aforesaid, Burton instead abandoned the well; that regulations of the State Department of Conservation require that all open reservoirs of gas or oil are to be plugged and isolated from other strata in order to avoid reservoir gas from escaping and becoming depleted by underground communication and mixture and furthermore to prevent the escape of high-pressure gas to the surface where life and property would be endangered; that Burton knowingly failed to plug off or isolate the two known gas reservoirs at 14,675 feet and 14,800 feet, in violation of the said regulations of the Department of Conservation; that Burton knowingly and falsely reported to the Department of Conservation and to your petitioners that the well was a "dry hole"; that because of the false report as a "dry hole", petitioners' property was branded as non-productive, causing petitioners to lose revenues that would otherwise have been derived from subsequent leasing; that in 1977 the Electric Log and Core reports aforesaid came to the attention of one William E. Bess, a former Schlumberger engineer and log analyst, who examined this data and conferred with one Clay Reichert, geologist for W. T. Burton Industries, Inc., and that Reichert confirmed the fact that the log and core data were genuine and that gas existed in productive quantities, and that notwithstanding such information Burton decided to abandon the well; that thereafter William E. Bess consulted with others who in turn approached plaintiffs proposing a new mineral lease for the purpose of reworking the well; that in 1977 plaintiffs executed an oil, gas and mineral lease to Painter Oil & Gas, Ltd. covering the property; that pursuant to this new lease, rework drilling operations were commenced on January 5, 1979 and by January 11, 1979 it was discovered that the valuable gas reservoirs discovered during the original drilling operation conducted by Burton had completely depleted and wasted as a result of Burton's failure to plug and isolate the aforesaid gas reservoirs, and that said gas reservoirs were found to be completely beyond any recovery whatever; that but for the negligence of Burton in failing to plug and isolate the gas reservoirs aforesaid from other strata, petitioners would have been able to recover the gas and condensate located in these reservoirs; that plaintiffs were first informed in January of 1979 concerning the negligence of Burton as aforesaid; that the value of the recoverable gas and condensate in the reservoirs aforesaid is not less than 25 million dollars, and this gas and condensate could and would have been recovered but for the negligence and failures of Burton as aforesaid; that had not Burton falsely characterized the well as a "dry hole", your petitioners would have been able to lease their land to others at not less than $100 an acre, and plaintiffs therefore suffered a loss of leasing rights of not less than $100,000.
TRIAL JUDGE'S REASONS FOR JUDGMENT
After a hearing on the exceptions, the trial judge concluded that the petition fails to state a cause of action. He cites Breaux v. Pan American Petroleum Company, 163 So.2d 406 (La.App. 3rd Cir. 1964), writ refused 246 La. 581, 165 So.2d 481 for the reason "No error of law." In Breaux, the same lessee owned leases both on the plaintiffs' *61 land and on the adjoining land. The lessee drilled a producing well on the adjoining property. Plaintiffs sued for damages allegedly sustained as a result of their lessee's breach of the implied obligation to protect them against drainage of oil and gas from beneath their land. The trial judge in the present case quotes from Breaux as follows:
"`In order for a landowner-lessor to recover damages from his lessee because of a breach of the lessee's implied obligation to exercise reasonable diligence in preventing drainage, we think the lessor must allege and present facts which establish that oil and gas could have been produced from the same reservoir by offset wells drilled on the leased premises, and that it would have been economically feasible for the lessee to drill such offset wells. He must also allege and prove with some degree of certainty the quantity of oil or gas which would have been produced from the offset wells, and the value of the minerals which the landowner would have received from that production had the offset wells been timely drilled and completed.' (emphasis ours)"
Using this rationale from Breaux, the trial judge states in his written reasons:
"Plaintiffs, in the instant case, do not contend that it would have been economically feasible in 1966 to produce the well in question; plaintiffs have not pleaded with certainty the quantity of oil or gas which would have been produced, and they have not alleged the value of the minerals or royalties which the landowner would have received. The damages and losses complained of are entirely speculative and plaintiffs have failed to allege facts upon which damages can be measured."
The trial judge also denied the plaintiffs' claim for loss of leasing rights on the grounds that plaintiffs failed to allege that they could have leased the property, or the terms of such leases, and that they would have accepted the offers, citing Fite v. Miller, 192 La. 229, 187 So. 650 (1939).
PLAINTIFFS' ARGUMENTS
Plaintiffs' brief commences by stating that the district court erred in maintaining the exception of no cause of action by:
"Misreading plaintiffs' cause of action as one sounding in breach of contract, instead of a tortuous breach of contract and in tort, and as implicitly seeking damages because the lessee failed to engage in `offset' drilling, the district court maintained the exception of no cause of action based on Breaux v. Pan American Petroleum Company, 163 So.2d 406 (3rd Cir. 1964). Plaintiffs have appealed the decision of the district court, because that decision does not address the actual cause of action presented by their petition."
In their brief plaintiffs begin their argument by stating the issue presented is res novo. They state their cause of action arises under the provisions of LSA-C.C. Article 2315 and under the provisions of the Mineral Code of Louisiana, in particular LSA-R.S. 31:122 which provides:
"A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee."
Also in support of their position, plaintiffs cite LSA-R.S. 31:14 which provides:
"The landowner has no right against another who causes drainage of liquid or gaseous minerals from beneath his property if the drainage results from drilling or mining operations on other lands. This does not affect his right to relief for negligent or intentional waste under articles 9 and 10 or against another who may be contractually obligated to protect his property from drainage." (Emphasis supplied by plaintiffs)
Plaintiffs argue that under these statutory provisions the defendant had an obligation to protect plaintiffs' property from drainage or escape of minerals alleged to exist thereunder. They point to the allegations *62 in the petition that Burton found two gas reservoirs under plaintiffs' property while drilling in 1966, and that instead of producing this gas Burton abandoned the well. Plaintiffs further point to the allegations that the Department of Conservation regulations require that all open reservoirs of gas or oil must be plugged and isolated from other strata in order to avoid reservoir gas from escaping and becoming depleted, and they allege that Burton knowingly failed to plug off or isolate the two known gas reservoirs in violation of these regulations of the Department of Conservation. Plaintiffs argue that defendant's failure to comply with these regulations constituted a breach of defendant's obligation to act as a reasonably prudent operator and permitted the waste or escape of valuable gas known to exist under plaintiffs' property. They then point to the allegation that the recoverable gas and condensate which escaped from the well by reason of defendant's failure to properly plug the well had a value of not less than 25 million dollars, which amount they seek as damages.
In their brief, plaintiffs emphasize the trial judge erred in stating as a reason for his judgment that plaintiffs "did not contend that it would have been economically feasible in 1966 to produce the well in question; plaintiffs have not pleaded with certainty the quantity of oil or gas which would have been produced, and they have not alleged the value of the minerals or royalties which the landowner would have received." Plaintiffs say this is a misconception by the trial court as to their cause of action. They state their lawsuit is not based on defendant's failure to produce the known gas under their property in 1966, but is instead based on defendant's "failure to properly plug the Roland Veazey No. 1 Well and thus permit the waste or escape of such valuable gas."
As to damages for loss of leasing rights, plaintiffs argue the defendant falsely reported to the Department of Conservation in 1966 that the well was a "dry hole", thereby condemning the property for further leasing. They allege that they could have leased the property for not less than $100 per acre, and that their loss of leasing rights was not less than $100,000. We note at this point that $100 per acre on 105 acres would be $10,500, not $100,000. In support of their claim for this loss, plaintiffs cite Angelloz v. Humble Oil & Refining Company, 196 La. 604, 199 So. 656 (1940); Mount Forest Fur Farms of America v. Cockrell, 179 La. 795, 155 So. 228 (1934); and Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20 (1946).
In a supplemental brief, plaintiffs emphasized their argument that Burton violated his duty under LSA-R.S. 31:122 to act as a reasonably prudent operator, by failing to plug off the two known gas reservoirs. As to the measure of damages, plaintiffs argue the allegation that oil and gas wrongfully wasted from their land had a value of 25 million dollars is sufficient.
DEFENDANT'S ARGUMENTS
Now turning to defendant's arguments, its brief notes at the outset that plaintiffs begin their brief by stating the trial judge misread their petition as one sounding in breach of contract and did not consider whether their petition alleges a cause of action in tort. Defendant points out that the trial judge did consider whether the petition states a cause of action in tort. We find defendant is correct in this respect. It is our understanding of the trial judge's written reasons that he found as a matter of law that plaintiffs' petition does not state a cause of action either in contract or in tort because the allegations of damages are too speculative.
Defendant next states the issues on appeal are as follows:
"1. Is a petition for damages, based on a tort for alleged loss of gas, sufficient to state a cause of action where the petition fails to allege that:
(a) a reservoir of gas existed which was susceptible of production in 1965-66;
(b) it would have been economically feasible and/or prudent to produce such gas in 1965-66;
(c) the capacity of the reservoir or the quantity of gas allegedly `lost';
*63 (d) the quantity of gas which could have been produced;
(e) the value of the gas or the `royalties' the plaintiffs would have received; and,
(f) a willful intent to injury plaintiffs?
2. Does a landowner have a cause of action for an alleged loss of fugacious minerals purportedly located beneath some portion of his property in 1966?"
In support of its argument that the allegations of damages are too speculative, defendant reviews the Louisiana jurisprudence. The first case cited is Louisiana Gas & Fuel Company v. White Bros., 157 La. 728, 103 So. 23 (1925), where a mineral lessee sued the mineral lessee of adjoining land for damages for the loss of gas under plaintiff's lease caused by the negligence of defendant in drilling a well on the adjoining lease so that the well blew out and formed a crater. Plaintiff alleged that 10 million cubic feet of gas a day worth 2¢ per 1,000 cubic feet escaped from under his lease over a period of two years. In sustaining an exception of no cause of action, our Supreme Court held:
"The defendant filed an exception of no cause of action, which was overruled by the court below and renewed in this court. This exception is well founded.
Even if plaintiff were owner of that proportion of the gas in the common reservoir, which the area of its holding bears to the total area of such common reservoir, nevertheless it is not alleged (and much less could it be proved) what the area of that common reservoir may be, and what part of it lies beneath plaintiff's holdings. So that there would be no measure for any special damages which plaintiff might suffer. And as for general damages, plaintiff could recover none unless it showed that defendant had wasted (or drawn) out of the common reservoir more than its (defendant's) just proportion of the gas in that common reservoir, which, of course, plaintiff could never show."
In McCoy v. Arkansas Nutral Gas Company, 184 La. 101, 165 So. 632 (La.1936) landowners sued a lessee of neighboring lands for damages resulting from defendant's negligence in permitting gas under plaintiff's land to escape through a well and crater located on the neighboring lands. Plaintiff sought recovery under LSA-C.C. Article 2315. In disallowing such damages, the court held:
"A review of the cases on that subject-matter shows that damages were not allowed because of the uncertain and speculative nature of the loss complained of. One of the reasons which we assigned in this case when it was previously before us for sustaining the exceptions of no cause and no right of action was that "the loss complained of was, manifestly, more a matter of uncertainty and speculation than of fact or estimate."
In Louisiana Gas Lands v. Burrow, 197 La. 275, 1 So.2d 518 (La.1941), the lessor sued the lessee for cancellation of the mineral lease and damages on the grounds that the lessee failed to produce gas in reasonable quantities from two wells on plaintiff's property, and that the lessee had operated wells on adjoining lands so as to drain the gas from under plaintiff's property. In sustaining an exception of no cause of action, the Supreme Court stated:
"The petition does not state any fact which could serve as a basis for its general charge that plaintiff's lands have been subjected to prejudicial drainage, nor does the petition state any fact by which the extent of the drainage, if any, could be established. A fair reading of the many articles and numerous allegations contained in the petition discloses that the whole theory of plaintiff's demand relates to the alleged failure of defendants to produce and market the full allowable amount of gas from its wells, or some unstated percentage thereof, and that this constituted a breach of defendant's implied obligation to reasonably operate the wells to their mutual profit and to protect the leased premises against drainage.
Our conclusion is that the petition as written does not contain sufficient allegations *64 of issuable fact to furnish a basis upon which any judgment may be rendered. It may be that plaintiff can set forth a cause of action for some character of relief by pleading the necessary facts, but in order to do this an entirely new suit will be required."
Defendant also cites Aladdin Oil Company v. Rayburn Well Service, Inc., 202 So.2d 477 (La.App. 4th Cir. 1967), writs denied 251 La. 388, 204 So.2d 573 for the reason "No error of law." In Aladdin the well operator sued a well service company for damages for loss of oil and gas in the underground reservoir lost at the time of a fire during reworking activities on the well. During the trial, an expert petroleum engineer testified for the plaintiff as to his estimate of the gas lost, based on electric logs for the wells in the area, core samples and production data from the wells, estimated volume of gas in the reservoir, porosity, percentage of water, shrinkage factors, etc. In finding this evidence insufficient to prove damages, the court held:
"This, however falls short of making the claim out to a sufficient legal certainty upon which to base an award, and the Courts of this state have never granted an award based on this type of calculation."
Of course, defendant also cites Breaux v. Pan American Petroleum Corporation, supra, which is the most recent Louisiana case on the subject, and in which writs were denied by our Supreme Court for the reason "No error of law." The above quoted portion of the opinion in Breaux follows the rationale of the line of cases discussed above that in a suit for damages for loss of oil and gas by drainage or by waste the allegations must show with some degree of certainty the quantity of oil and gas lost.
As to damages for loss of leasing rights, defendant argues the trial judge correctly held that under Fite v. Miller, supra, the allegations are too speculative. Defendant also cites Lebleu v. Vacuum Oil Company, 15 La.App. 639, 132 So. 233 (1st Cir. 1931) and Ferguson v. Britt, 191 La. 381, 185 So. 287 (La.1938) in which loss of leasing rights was denied because of speculative damages.
FUGACIOUS MINERALS ARGUMENT
The trial judge recognized the fundamental concept of LSA-R.S. 31:6 that oil and gas are fugacious minerals which are not subject to ownership until reduced to possession. However, the district judge did not base his decision on this concept. He preferred to rely on the rationale of Breaux, which followed the rationale of the long line of jurisprudence discussed above as to speculative damages for drainage or waste of oil or gas.
Of course, in the present case there is no allegation that any oil or gas was ever possessed by plaintiffs. It necessarily follows that none was ever owned by plaintiffs. They do not allege possession or ownership of any such minerals. Nevertheless, they seek damages for the loss of the oil and gas which escaped, apparently on the theory that they lost "the exclusive right to develop and explore" their property for the production of such minerals, as provided in LSA-R.S. 31.6.
Since we conclude under the settled jurisprudence discussed above that the allegations of damages are too speculative to support a cause of action for either breach of contract or in tort, we find it unnecessary to decide whether plaintiff's petition must also fall because they never possessed or owned the oil or gas for loss of which they seek damages. We prefer instead, as did the trial judge, to base our decision on the established jurisprudence as to speculative damages.
CONCLUSION
We conclude the trial judge correctly decided this case under the rationale of Breaux. Although Breaux involved drainage and the present case allegedly involves waste, we think the rationale is the same. Insofar as allegations and proof of damages are concerned, it is immaterial whether the oil and gas are lost by drainage through the strata to other wells on other lands, or by waste through an unplugged well on plaintiffs' land. The lessor must allege and prove that oil and gas could have been *65 produced in 1966 from the reservoirs alleged to be under their land, and that it would have been economically feasible for the lessee to produce such oil and gas. Furthermore, the lessors must also allege and prove with some degree of certainty the quantity of oil or gas which would have been produced from the well and the value of the minerals which the landowners would have received from that production.
As to the alleged loss of leasing rights, we agree with the trial judge's reasons stated above.
It is our view that under the present jurisprudence of this State, plaintiffs' allegations of damages for loss of oil and gas are too speculative to support a cause of action, either for breach of contract or in tort.
We are aware of LSA-C.C.P. Article 934 which provides that when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment shall order such amendment within a delay ordered by the court. However, in the present case plaintiffs have not asked for a remand and have not suggested whether or how the above stated objections to their petition could be removed by amendment.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
LABORDE, J., dissents and assigns reasons.
LABORDE, Judge, dissenting.
I respectfully dissent from the majority's dismissal of this suit upon an exception of no cause of action.
Accepting the allegations of the petition as true, as we are required to do for trial of such an exception, the plaintiffs have lost specified amounts of oil and gas due to defendant's failure to properly plug their well when it was abandoned.
The majority opinion adequately sets forth the facts alleged by plaintiffs. What more could plaintiffs have alleged? The majority in its conclusion demand that plaintiffs allege and prove that gas and oil could have been produced in 1966 and that plaintiffs prove with some degree of certainty the quantity and value of the minerals which they allegedly lost. Yet, by their decision, plaintiffs are prevented from having a trial on the merits to prove their claim.
In addition to the majority's error in holding that plaintiffs' petition contained insufficient allegations, the majority, at the very least, should have remanded the suit to permit amendment, instead of dismissing it outright. By doing so plaintiffs would have an opportunity to allege those facts to properly litigate substantive rights instead of being denied their day in court on the basis of subtle technicalities.
I respectfully dissent.