HIGGINS, Justice.
 

 The lessors instituted this suit to cancel the mineral lease covering one hundred arpents of land in the Little Bayou Oil Field, Iberia Parish, Louisiana, granted on April 10, 1935, alleging failure to properly develop the property and failure of consideration because of inconsequential production and, in the alternative, that the lease is null and void because it was potestative and authorized perpetual holding of a servitude.
 

 The defendants filed exceptions of vagueness and no cause of action, which were overruled and in their answer denied the allegations of the petition, and pleaded estoppel based on the fact that, pursuant to the written demand of the lessor, a well had been drilled on the property less than thirty days before the suit was filed.
 

 The district judge sustained the plea of estoppel and denied the prayer for cancellation of the lease but declared that the equities of the case required further development, and as the lease did not contain a specific primary term, he fixed a term of ten years from April 10, 1935, and further ordered, under penalty of forfeiture of the lease, the commencement of the drilling of a well within a period of sixty days from the date the judgment became final, and thereafter, continuous drilling of additional wells at sixty day intervals from the abandonment or completion of the previous well, without limiting the continuous development other than subjecting it to drilling restrictions imposed by the State of Louisiana or the United States.
 

 The defendants appealed from all parts of the judgment except the part sustaining the plea of estoppel and refusing to cancel the lease.
 

 The plaintiffs answered the appeal and asked that the judgment be amended so as to grant them the full relief prayed for, and, in the alternative, that the equitable relief accorded them by the judgment be affirmed.
 

 The evidence shows that the defendants and their assignors have drilled a total of nine wells on the one hundred arpent tract of land in question, in accordance with the proper practices of the industry over a period of six years, at a total cost, including operating expenses of $186,-455.87, resulting in a loss of over $1OG,000 to theni. Offset wells had been drilled close to the line of the adjoining Bernard tract, which was a successful oil field, and thereby avoided any drainage of the property in que~tion. For the purpose of test
 
 *644
 
 ing all indicated prodúction horizons other wells had also been drilled. In a letter from the lessors, dated April 19, 1941, demanding the further drilling of a well, the defendants complied therewith by drilling a well, which was completed less than four weeks before this action was instituted and preparations for the drilling of an additional well were in progress when the suit was filed.
 

 In Tooke et al. v. Simplex Oil Co. Inc., et al., 191 La. 726, 186 So. 83, 85, the lessors brought the same kind of suit as the instant one and upon the identical primary grounds here urged. The facts in the case were very similar to those here involved. We affirmed the judgment of the trial court sustaining the plea of estoppel and in dismissing the lessors’ suit, said: “* * * The plaintiffs having stated in their demand what was necessary to comply with the provisions of the lease and the defendants having acted thereon, the plaintiffs would [will] not now be permitted to change their position to defendants’ injury.” (Brackets ours.)
 

 The foregoing authority is decisive of the main issue and we shall now direct our attention to a consideration of the alternative ground. The lease does not contain any provision establishing a primary term but does place an unconditional obligation on the lessees to drill three initial wells to a depth of not less than 3,000 feet, the drilling operation to begin on or before June 10, 1935, i. e., within 60 days from the date of the lease, otherwise the lease was to become null and void, without the necessity of putting the lessees in default. The lessees were also to have a delay of sixty days within which to begin the actual drilling operations on the second well, after the date of the completion of the first well, and the same period of time from the completion of the second well, within which to commence drilling the third well. The lessees were granted the right to hold the lease as long as proper drilling operations were continued and as long as oil and gas were produced and the property developed in a businesslike manner.
 

 In the case of Sam George Fur Co. v. Arkansas-Louisiana Pipeline Co., 177 La. 284, 148 So. 51, 52, the plaintiff sought to annul and cancel a mineral lease on the grounds, first, that the lease was in perpetuity and, second, that it contained potestative conditions. In affirming the judgment of the district court denying the plaintiffs’ relief, this court stated:
 

 “It is expressly stipulated in the original contract that: ‘If the Lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for ten years from such discovery and as much longer as oil, gas or sulphur shall be produced therefrom in paying quantities.’
 

 “Such a lease is by no means a lease in perpetuity, as the main consideration of the lease is the development of the land, and it is a matter of common knowledge that oil and gas fields cease to produce in paying quantities after the lapse of a certain number of years.
 

 
 *646
 
 "The lease in perpetuity reprobated by the law is the mere holding by the lessee, indefinitely, of an option to exploit the property, without production of any kind, since the lessee must either develop with reasonable diligence or give up the lease.”
 

 With reference to the second point, the court said:
 

 “Plaintiff contends, in the alternative, that those are potestative conditions, and that the contract of lease is therefore null and void.
 

 “It is true that these conditions are clearly potestative as they make the execution of the contract of lease depend upon the will of the lessee, thereby destroying the obligation which the lessee had assumed. Rev. Civ. Code, art. 2024.
 

 “However, while the lease in this case was without effect so long as it remained with the lessee to execute or- withdraw from it, a different condition arose when ,the lessee and its assigns actually discharged the obligation, which, but for the potestative condition, would have been imposed upon the lessee, and plaintiff accepted and profited by the advantage resulting therefrom. Caddo Oil & Mining Co. v. Producers’ Oil Co., 134 La. 701, 711, 64 So. 684; Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 So. 754; Busch-Everett Co. v. Vivian Oil Company, 128 La. 886, 887, 55 So. 564.
 

 “Six gas wells have been drilled under this lease, and lieu royalties have been paid yearly not only up to the date of the filing of this suit, November 28, 1930, but plaintiff has received royalty since the suit was filed. Tr. 60.
 

 “Plaintiff cannot, while retaining such advantage, be permitted to repudiate the obligations assumed thereby.”
 

 In the light of the foregoing authority, even conceding that the lease in question contained-a potestative condition, concerning which question we express no opinion, the defendants have actually discharged obligations thereunder and the plaintiffs have accepted benefits therefrom and profited thereby and cannot now retain these advantages and repudiate their obligations. After the lessees, at great expense and in good faith, complied with their present obligations for the development of the property, they should not be divested of their rights because there is a difference' of opinion with the lessors as to the proper amount of drilling operations. See, also, Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Doiron v. Calcasieu Oil Company, 172 La. 553, 134 So. 742; Ardis v. Texas Company, 155 La. 790,
 
 99
 
 So. 600, and Risinger v. Arkansas-Louisiana Gas Company, 198 La. 101, 3 So.2d 289.
 

 The trial judge does not cite any appropriate authority authorizing the court to fix a primary term of ten years for the lease where the parties themselves failed to insert such a provision therein, no.r does he refer to any case authorizing the court to change the mineral lease by obligating the defendants to continuously drill wells every sixty days after the completion or abandonment of the previous well for an
 
 *648
 
 indefinite period of time. If the defendants hereafter do not sufficiently or adequately develop the property within the provisions of the lease, or if the production therefrom is so small as not to justify continuing the lease in effect, within the meaning of its terms and the contemplation of the parties, then an action at that time could be instituted by lessors to cancel it. But the courts have no right, under Article 2047 of the Revised Civil Code, to rewrite or change the provisions of the lease, as the trial judge did, particularly where lessees are not in default. The district court relied upon Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275, and Ward v. Hayes-Ewell Co., 155 La. 15, 98 So. 740, so called timber lease and sales cases, in fixing the time and manner of developing the leased property herein. The principle of those authorities is inapplicable here, because there is no way of determining the amount of oil, gas and other minerals contained in the land in question or what would be a reasonable time within which to remove them. Furthermore, there is no way of telling what additional reserves may be discovered and how much time it would require to properly remove them.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is affirmed in so far as it sustains the.plea of estoppel and does not cancel the lease. In all other respects, the judgment is annulled, and the plaintiffs’ suit is dismissed at their costs.
 

 ROGERS, J., absent.