18 So.2d 198

**PARTEN v. WEBB et al.**

No. 37267.

April 17, 1944.

Rehearing Denied May 22, 1944.

Campbell & Campbell, of Minden, and Herold, Cousin & Herold, of Shreveport, for plaintiff and appellant.

W. P. Miller, of Shreveport, Dan W. Stewart, Jr., of Minden, and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for defendants and appellees.

PONDER, Justice.

On November 26, 1921, John Babb executed a mineral lease in favor of Robert D. Webb on 360 acres of land which he owned in Webster Parish for a primary term of five years and as long hereafter as oil or gas was produced. Under its terms, Babb was to receive one-eighth royalty of the oil and $200 per year from each well producing gas during the time the gas was used off the premises.

On March 13, 1922, Babb sold to Webb all the minerals under 120 acres of the land covered by the lease, thereby extinguishing the lease insofar as the 120 acres were concerned. Thereafter, the lease covered the remaining 240 acres of land.

On January 17, 1924, Webb subleased to the Humble Oil and Refining Company his lease on this property and leases on other property for $200,000 cash and other considerations.

The Humble Oil and Refining Company went upon the leased premises and produced oil and gas. Babb was paid royalties in conformity with the original lease, and Webb was paid the overriding royalties called for in the sublease insofar as production permitted.

On April 17, 1926, Babb sold J. R. Parten the fee title to the 360 acres of land covered by the original lease subject to all surface leases and contracts of record.

On October 19, 1927, the Humble Oil & Refining Company and the mineral owners of 40 acres of the land covered by the lease entered into an agreement purporting to change the royalty provisions of the original lease insofar as the forty acres were concerned. It is stated in this agreement that the changes are made in keeping with the original lease. The agreement provides for a royalty of one-eighth of the oil produced and one-eighth of the amount realized from the sale of gas taken from the land, etc. The original lessee, Robert D. Webb, was not a party to this agreement.

It appears that shortly after this agreement was entered into, the Humble Oil and Refining Company drilled on the forty acres of land and brought in a gas well.

On May 25, 1929, the Humble Oil & Refining Company assigned to the Standard

Oil Company of Louisiana its sublease on this property and other properties for a consideration of $442,625 cash and other valuable consideration. The assignment was made subject to the provisions of the sublease from Robert D. Webb to the Humble Oil & Refining Company. Thereafter, Webb, the original lessee, and the Standard Oil Company entered into three separate agreements amending the sublease.

On January 28, 1938, J. R. Parten, the owner of the fee title to the land, wrote the following letter to the Standard Oil Company:

"Woodley Petroleum Company
"Houston, Texas, January 28, 1938
"Standard Oil Co. of Louisiana
"Shreveport, Louisiana

"In re: Babb Farm: SE¼ of NW¼; NE¼ of SW¼; NW¼ of SE¼; SW¼ of NE¼; NE¼ of SE¼; SE¼ of NE¼; SE¼ of SE¼—all in sec. 14; and NW¼ of SW¼ and SW¼ of SW¼ of sec 13, all in Twp. 21 N., Range 10 West, Webster Parish, La., 360 acres more or less.

"Gentlemen:

"Your attention is invited to the situation which obtains with reference to the lease claimed by your company on my fee property, above described, in the Cotton Valley oil field.

"As you are well aware, this property was leased by the owner in 1921 before its purchase by me and that, although at one time the property produced oil and gas in paying quantities, the production now had by your company on this large acreage is so small as not to be in paying quantities.

"We therefore take it that there is not sufficient production on the land to extend the lease any further.

"However that may be, I as the owner of the said property do not desire to declare a forfeiture of the said lease without giving your company an opportunity to drill the property to the presently producing horizon known as the Bodcaw sand in the Cotton Valley field.

"All indications point to the existence of this producing sand under the property in question and it is common knowledge that the other nearby wells producing from this sand are draining these lands.

"Accordingly, I wish to demand that you either drill the property to the Bodcaw sand or surrender the lease. In the absence of compliance with this demand within a reasonable time, I, of course, reserve the right to pursue my remedy either for forfeiture, cancellation or damages as are reserved to me by law.

"Very truly yours,
"J. R. Parten"

On February 9, 1938, the Standard Oil Company, Robert D. Webb and the Hunt Oil Company entered into an agreement whereby the Hunt Oil Company obligated itself to drill for oil. In this agreement, the Standard Oil Company transferred all of its rights and interest in the original lease to the Hunt Oil Company.

On February 10, 1938, the Hunt Oil Company began drilling operations on the leased premises.

On February 25, 1938, while the Hunt Oil Company was engaged in drilling operations, Parten addressed the following letter to the Standard Oil Company:

"Woodley Petroleum Company
"Houston, Texas
"February 25, 1938
"Standard Oil Co. of Louisiana
"Shreveport, Louisiana

"In re: Babb Farm: SE¼ of NW¼; NE¼ of SW¼; NW¼ of SE¼; SW¼ of NE¼; NE¼ of SE¼; SE¼ of NE¼; SE¼ of SE¼—all in sec. 14; and NW¼ of SW¼ and SW¼ of SW¼ of sec. 13, all in Twp. 21 N., Range 10 West, Webster Parish, La., 360 acres more or less.

"Gentlemen:

"Your attention is invited to my previous letter of January 28th. regarding my property above described.

"Since nothing further has been done, and I have not received a reply from you, and since you are not now producing oil or gas from the property in paying quantities, I wish to inform you that your lease is not now alive.

"I wish to make demand upon you to give me a release as provided by the laws of the State of Louisiana.

"If such release is not forthcoming in due course, I will of necessity hold you responsible for all ensuing damages.

"Very truly yours,
"J. R. Parten"

On February 28, 1938, the Standard Oil Company of Louisiana replied as follows:

"Standard Oil Company of Louisiana
"Shreveport, Louisiana
"February 28, 1938

"Re: Babb Farm, Cotton Valley Area, Webster Parish, Louisiana
"Woodley Petroleum Company
"P. O. Box 1403
"Houston, Texas

"Dear Sir:

"In reply to your letter of February 25, 1938, will say that the Standard Oil Company of Louisiana no longer hold any interest in this property whatsoever, having transferred it to Hunt Oil Company.

"It is my understanding that these people are actively engaged in drilling on the property at this time, to comply with your request of January 28, 1938.

"Yours very truly,
"Cecil Morgan"

On April 9, 1938, the Hunt Oil Company commenced drilling another well on this tract of land.

After these drilling operations were begun, Parten addressed a letter to the Hunt Oil Company on March 3, 1938, informing it that he had previously advised the Standard Oil Company that its lease had lapsed for failure to produce oil in paying quantities. In reply, the Hunt Oil Company wrote Parten that it was under the impression when the sublease was executed that all Parten desired was the drilling of wells to the horizons which were producing in that area, and that it had commenced operations in order to give adequate development.

The two wells were completed as producers on May 26, 1938. The Hunt Oil Company began drilling another well on June 15, 1938, which was completed on September 15, 1938.

On July 20, 1938, J. R. Parten brought suit against Robert D. Webb and the Hunt Oil Company, seeking to recover all payments made to Webb under the terms of the lease and praying for judgment decreeing the Hunt Oil Company in possession and operating the premises directly under his control, free from any and all claims of Webb to any interest or payment arising out of the lease, as though the petitioner had executed the sublease with the Hunt Oil Company.

Estoppel was one of the defenses set up by the defendants. This plea is based on the grounds that the plaintiff interpreted the contract of lease as being in effect by demanding and securing additional development of the leased premises and the acceptance of the benefits flowing from the lease, royalty payments under its terms.

After this suit was filed, the Hunt Oil Company began drilling two other wells on this property, which were completed as producing wells sometime in December, 1938.

Upon trial of the suit, the lower court gave judgment sustaining the plea of estoppel and dismissing the plaintiff's suit. The plaintiff has appealed.

Sometime prior to the trial of the merits of this case, we had occasion to entertain an appeal from a judgment rendered in the same cause, dismissing the plaintiff's suit

on exceptions of no cause and no right of action. We set aside the judgment, overruled the exceptions and remanded the case for hearing on the merits. Parten v. Webb, 197 La. 197, 1 So.2d 76.

Counsel for the plaintiff is under the impression that our prior decision is controlling of the issues involved herein.

■ Our decision was to the effect that the plaintiff's petition set forth a cause and right of action, and, for that purpose, we had to consider the allegations of the petition as true. A different rule applies on the trial of the merits.

The plaintiff contends that Webb's lease had lapsed or expired under its terms by the lessee's failure to produce oil or gas in paying quantities prior to the execution of the sublease to the Hunt Oil Company. He takes the position that Webb did not own any lease-hold rights at the time the sublease to the Hunt Oil Company was executed.

We gather from the testimony that prior to plaintiff's letter of January 28, 1938, to the Standard Oil Company, Webb was negotiating with Grady Vaughn, an operator, in an attempt to secure the drilling of deep wells, as the Standard Oil Company had given notice that it would drill no more deep wells. During the pendency of these negotiations, the plaintiff, on January 28, 1938, addressed the letter to the Standard Oil Company demanding that it either drill the property to the bodcaw sand or surrender the lease. It is significant that the plaintiff stated in that letter he did not desire to demand the forfeiture

of the lease without giving an opportunity to drill the property to the producing horizon.

Within a few days after this letter was written, February 9, 1938, Webb, having failed to consummate an agreement with Vaughn, entered into a contract with the Standard Oil Company and the Hunt Oil Company whereby the Hunt Oil Company took over the sublease and agreed to commence drilling operations at once. On the very next day, February 10, 1938, the Hunt Oil Company went upon the property and began drilling. It continued the operations until the producing horizon was reached and oil was produced.

The purpose of the assignment to the Hunt Oil Company was to carry out Parten's desire and keep the lease in force. It does not appear that Parten ever made any objection to the drilling of this well. There is evidence in the record that Parten notified the Hunt Oil Company sometime after the drilling operations had begun that the drilling was not under the lease. However, this is of no moment. Parten could not, after securing a compliance with his demand for these drilling operations under the provisions of the lease, change his position. The immediate compliance with his demands was certainly within a reasonable time.

The plaintiff in his letter to the Standard Oil Company interpreted the contract of lease as being in effect by demanding compliance with its provisions. We are at a loss to see how he can take the position that the lease had expired when he, in his letter, demanding compliance with the lease, stated that he did not desire to have the lease forfeited without giving an opportunity to drill the property. The lessee and the sublessee incurred considerable trouble and expense in order to comply with the contract as interpreted and demanded by the plaintiff, and the plaintiff cannot now be heard to say that the lease has expired.

In the case of Tooke v. Simplex Oil Company, Inc., 191 La. 726, 186 So. 83, 85, the plaintiff sought to cancel a mineral lease on the ground of lack of adequate development. The plaintiff therein demanded development of the property, and the defendant began drilling operations. After the drilling operations had begun, the plaintiff sought to have the lease cancelled for lack of adequate development. We arrived at the conclusion therein that: "The plaintiffs having stated in their demand what was necessary to comply with the provisions of the lease and the defendants having acted thereon, the plaintiffs would not now be permitted to change their position to defendants' injury. United States Fidelity & Guaranty Company v. Putfark, 180 La. 893, 158 So. 9."

Our holding in the case of Tooke v. Simplex Oil Co., Inc., supra, is applicable to and decisive of the questions raised herein. The plaintiff herein demanded what he considered was a necessary compliance with the provisions of the lease, and the lessee acted thereon. The plaintiff cannot be permitted to change his position to the injury of the defendants.

In the case of Sabatier v. Canal Oil Company, 202 La. 639, 12 So.2d 665, we held in effect, where a sublessee complied with the lessor's demand for further development of property for oil, that the lessor would be estopped from obtaining cancellation of the lease.

"It is well settled that, when a person has done or said something with intent to influence the dealings of another, and the other has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter." Bradford-Kennedy Co. v. Brown, 152 La. 29, 92 So. 723, 726, and cases cited therein. Also see: Brock v. Black, Rogers & Co., 201 La. 1017, 10 So.2d 790.

The plaintiff contends that the party urging a plea of estoppel barring a suit must allege and prove that he relied on plaintiff's conduct and acted to his injury, and that the letter to the Standard Oil Company did not authorize Webb or other parties to act thereon.

■ The right to go on the property under the lease and develop it for oil was granted to Webb. The Hunt Oil Company's right to do so under its sublease necessarily flows from the original lease. The development of the property by the Hunt Oil Company would be the same as if Webb, the original lessee, had gone upon the property and secured production. The notice to the sublessee is notice to the original lessee for the reason that the duty of a lessee to develop the leased premises is not personal in the sense that the performance may not be by others through his procurement or agency. The

lessee could personally develop the property or cause it to be developed through a sublease or by other agencies. In either instance, there would be a compliance with the terms of the lease.

■ We have considered many cases dealing with mineral leases and the development of the property has in most instances been by the sublessee, assignee or agent. So long as the terms of the lease are complied with, the lessor would have no right to complain of the method used by the original lessee in carrying out the provisions of the lease.

■ The plaintiff contends that the contract of October 19, 1927, had the effect of dividing the lease.

In this contract, the plaintiff, the Humble Oil and Refining Company, and the mineral owners of forty acres of land entered into an agreement changing the royalty provisions of the original lease. It is significant to note that it is stated in this contract that the changes are made in keeping with the original lease. However, it is not necessary for us to go into this contention for the reason that we have concluded that the plaintiff is bound by the terms of the original lease and cannot now question its provisions. Moreover, Webb, the original lessee, was not a party to this agreement, and it would have no binding effect insofar as he is concerned.

In view of our conclusion that the trial court correctly sustained the plea of estoppel, there could be no purpose gained in reciting and discussing the other contentions advanced in this case.

For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.

O'NIELL, C. J., does not take part.

ODOM, J., absent.