**86 So.2d 201**

**SOHIO PETROLEUM COMPANY,**
**Sun Oil Company,**

v.

**Dr. Martin O. MILLER.**

**No. 42186.**

Feb. 20, 1956.

Wilkinson & Wilkinson, New Orleans, Jennings B. Jones, Jr., Cameron, Lestage & Arnette, Jennings, for defendant and appellant.

Liskow & Lewis, Lake Charles, Joiner Cartwright, Henry Lastrapes, Jr., Beaumont, Tex., for appellees.

FOURNET, Chief Justice.

The Sohio Petroleum Company and the Sun Oil Company, joint holders and owners of a certain oil, gas and mineral lease dated July 18, 1945, executed by Dr. Martin O. Miller to the latter company and being operated by the former, having received a letter dated November 24, 1953, addressed to them by their lessor for the purpose of placing his lessees in default, wherein they were requested to commence development operations within sixty days or be considered in default of their lease obligations, on January 7, 1954, instituted proceedings in the District Court, alleging that the said notice was defective in that it declared that there had been no development for over a year prior to its date when in fact on July 16, 1953, a well had been commenced which was drilled to a depth of 8,505 feet and upon failure to produce oil and gas in paying quantities was abandoned, less than four months prior to the date of the letter, so that the fact relied on as constituting a breach of the lease—which, under the terms of the lease contract, had to be set forth in the notice—was an erroneous statement and the letter was insufficient to serve as a demand for further development or as a notice of default; and sought judgment declaring that defendant has no right, based on the said letter, to contend that plaintiffs have failed to develop the land in compliance with the lease requirements, or, in the alternative, declaring that plaintiffs have a reasonable time within which to commence the operations necessary to maintain the lease in effect.[1] Defendant's answer, although admitting the erroneous statement in the letter and acknowledging that a well had been drilled in July, 1953, nevertheless denied that the development

---

[1]. The plaintiffs also alleged, but in the alternative and only if it be held that the letter was sufficient to serve as the sixty day notice provided for in paragraph 9 of the lease, that they are nevertheless not required by the terms of the contract to conduct any additional drilling operations on the lands for the reason that (1) there had been production of minerals in paying quantities under the lease continuously since October, 1950; (2) there were no producing wells on lands adjoining those of defendant so as to necessitate the drilling of offset wells; (3) the drilling of any additional well would be exploratory and speculative, according to the then available information and data.

at that time was reasonable and in accordance with the contract, and in reconvention asked for cancellation of the lease; he prayed that the plaintiffs' demands be rejected and, as reconvenor, that the lease be declared of no further effect and ordered cancelled in toto, or, alternatively, cancelled as to property which was not productive of minerals, or, in the further alternative, cancelled insofar as it bore on tracts 3, 5, 6 and 7, or any one or more of those tracts. Judgment was rendered on the face of the pleadings upon plaintiffs' motion, and in accordance with the prayer of their main demand—from which judgment the defendant prosecutes this appeal.

The lease with which we are here concerned originally covered some 3,408 acres of land belonging to the defendant located in Cameron Parish and comprising seven separate parcels, some of which were adjoining but were non-contiguous to others; these were described in the lease as individual tracts, each designated by number, with indication of its acreage in round figures, these being Tract No. 1, 2,100 acres; Tract No. 2, 240 acres; Tract No. 3, 530 acres; Tract No. 4, 162 acres; Tract No. 5, 38 acres; Tract No. 6, 160 acres; Tract No. 7, 178 acres.[2] The lessee Sun Oil Company transferred an undivided half interest to Sohio Petroleum Company and during the primary term of the lease, ex-

tending to July 28, 1951, it was maintained by rental payments and shut-in gas well payments, a well having been drilled in February, 1950, within Tract No. 4 and shut in as a gas well capable of production. That was the first drilling effort on any of the lands covered by the lease; it was designated the "M. O. Miller B–1" well, and in November of that year (1950) a drilling unit of almost 500 acres was established around the well but included only some 107 acres of the leased property (fractions of Tracts 3 and 4). At the same time another unit of similar size was formed around the discovery well of the field, known as the "Richard Unit Well No. 1," completed some three years previously on land adjoining lessor's Tract 2; of the leased acreage, that unit affected about 168 acres in the said Tract 2. Both wells were then placed on production, have continued to produce since that time, and the defendant has been paid royalties under the lease in the proportion of his fractional interest in the total acreage of each unit.

Two more drilling attempts were made, both unsuccessful; the first of these, an exploratory well to a depth of 8,511 feet, was drilled in September, 1952, by a sublessee of the lessees, within Tract 3, and was abandoned as a dry hole in October of that year;[3] the last, the well commenced in July, 1953, mentioned earlier in this

2. For a clear understanding of the location of these tracts with respect to each other, reference is made to a plat attached to the brief of defendant-appellant, the

original being on file with the record in this case.

3. It appears that early in 1952 the lessor filed suit to cancel the lease, but since

opinion and located within Tract 2 of the leased premises, was likewise abandoned. There has been no drilling on Tracts 5, 6 and 7 since the execution of the lease.

Paragraph 9 of the lease, dealing with breach by lessee of any obligation arising thereunder, provides in part: " * * * In the event that Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the fact relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. Neither notice nor attempted compliance shall be evidence that a breach has occurred. After discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder, but, in discharging this obligation, it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil, gas or other mineral in paying quantities."

The lessor's letter of November 24, 1953, after referring to the mineral lease of July 18, 1945, continued: "I have recently received knowledge of your release of cer

---

he had failed to first serve notice on the lessees as required by the lease contract he caused the suit to be dismissed, following which he wrote them a letter, dated July 28, 1952, in which he stated:

"At the hearings before the Louisiana Conservation Commission during October and November of 1950 (relative to establishment of said units) it was made abundantly clear that reasonable development of my lands leased to Sun Oil Company required the early drilling of additional wells thereon.

"Thereafter throughout the year 1951 no such reasonable development was proceeded with or initiated in any way. Hence the present controversy and lawsuit between us.

"To me it is indefensible that you should attempt to hold and tie up, to my disadvantage and not even to your own advantage, the relatively extensive tracts of lands originally involved in this lease. Moreover, it is incomprehensible to me that you should find any support from the law in your veritably malicious posi-

tion in this matter. Eventually I am confident that our courts will censure and grant reparation for such oppressive dealings as have been carried on by you in this instance.

"At the moment, however, I am acutely aware of the legally technical inadequacy of the suit I had filed against you, and it is the purpose of this letter to eliminate same. I have directed my attorneys to withdraw said suit immediately. I am now giving you formal notice hereby that I consider that operations are not being conducted by you in compliance with this lease, to-wit: You are failing to reasonably develop the acreage retained under the lease, having already made an initial discovery of gas in paying quantities. I therefore demand that you resume operations to develop same. I particularly designate my leased lands in Section Eleven, Township 15 South, Range 5 West [Tract 3] as having been unreasonably neglected by you and demand that you begin and proceed with the drilling of a well on said lands in said section within the next sixty (60) days."

'tain of these lands.[4] However, you are still retaining several different tracts by reason of the extension of the term of the lease through my unitized interest in the two gas wells in Section 12, T. 15 S., R. 5 W., and Section 1, T. 15 S., R. 5 W. The said wells in Sections 1 and 12 were completed as long ago as October, 1950. Since that time you have drilled but one well on my said lands held under said lease. That well was located in Section 11 and was drilled under a restrictive covenant, as I understand it, whereby exploration was limited to a prescribed depth. It was plugged and abandoned on October 9, 1952. Now, for over a year you have done nothing to develop this lease. For that reason I believe you are violating the obligation of the lease to develop same after initial production. I particularly regard as such a breach of this lease your failure to explore for minerals anywhere in that area south of Grand Chenier Ridge comprised of a 160 acre tract [No. 6] and a 178 acre tract [No. 7] belonging to me, being located in * * *.[5] This letter is intended as the required 60 days notice as provided for in our contract, calling upon you to resume development operations within such period, or be considered in default of your lease obligation."

4. The reference is to Tract No. 1, which was surrendered and release from the lease in 1953—obviously as a result of the letter quoted in footnote 3, supra.

5. The area south of Grand Chenier Ridge is that in which lie Tracts 6 and 7, these

The district judge concluded, in view of the admission in the pleadings that a well had been drilled in July, 1953, that *the fact* stated as constituting a violation of the lessees' obligation to develop after initial production was untrue; therefore the letter of November 24, 1953, did not and could not serve as notice to the lessee in accordance with the terms of the lease and lessor has no right, based on the letter, to contend that the lessees have failed to develop in accordance with the requirements of the lease.

 In this we think the trial judge was in error. While it is true that the letter, in addition to detailing the lessees' operations under the lease (except for the one omission), contained the statement that it had been more than a year since any development had taken place, when in fact a well had been drilled in July and abandoned early in August, 1953, within four months of the date of the letter, that of itself does not necessarily render the notice ineffective, because the lessees are notified therein of another "fact relied upon as constituting a breach" of the lease; the lessor states: "I particularly regard as such a breach of this lease your failure to explore for min-

being on the opposite side of the said Ridge from the Richard and Miller wells and more than two miles distant therefrom, as well as from the two dry holes drilled in July, 1953, and September, 1952, within tracts 2 and 3 respectively.

erals anywhere in that area south of Grand Chenier Ridge." Whether or not the failure to so explore—if in fact no such exploration has taken place—constituted a breach of the obligation to "reasonably develop the acreage" (paragraph 9 of the lease), is a matter which addresses itself to the merits of the case when, after the introduction of all the evidence, it can be determined whether or not under the terms of the lease there was a reasonable development of the acreage as a whole or with respect to any of the several parcels.

For the reasons assigned, the judgment of the district court on the pleadings, declaring that the letter of November 24, 1953, directed to plaintiffs by defendant, "did not set forth a fact which could be relied on as constituting a breach of the oil, gas and mineral lease described in said petition" and that it was not sufficient to serve as notice under Paragraph 9 of the lease or as a basis for the cancellation of the lease, is reversed and set aside; and the case is remanded for trial on the merits, to be followed by such judgment as the evidence will warrant. Costs of this appeal to be paid by the plaintiffs-appellees; all other costs to await the final determination of this case.