112 So.2d 695

**SOHIO PETROLEUM COMPANY and Sun Oil Company,**

v.

**Dr. Martin O. MILLER.**

No. 43810.

June 1, 1959.

James Wilkinson, III, New Orleans, Jennings B. Jones, Jr., Cameron, Lestage & Arnette, Jennings, for appellant.

Liskow & Lewis, Lake Charles, Joiner Cartwright, Henry Lastrapes, Jr., Beaumont, for plaintiffs-appellees.

HAMITER, Justice.

By an instrument dated July 18, 1945 Dr. Martin O. Miller granted an oil, gas and mineral lease to the Sun Oil Company covering seven separate tracts of land owned by him and situated in Cameron Parish. The tracts, containing a total of 3,408 acres (more or less), were numerically designated in the lease as follows:

No. 1.   2,100 acres (comprising Section 15 and parts of Sections 10, 11, 14 and 23, Township 15 South, Range 6 West).

No. 2.   240 acres (in Section 1, Township 15 South, Range 5 West).

No. 3.   530 acres (in Section 11, Township 15 South, Range 5 West).

No. 4.   162 acres (in Section 12, Township 15 South, Range 5 West).

No. 5.   38 acres (in Section 14, Township 15 South, Range 5 West).

No. 6.   160 acres (in Section 14, Township 15 South, Range 5 West).

No. 7. 178 acres (in Section 23, Township 15 South, Range 5 West).

The leased lands included three pairs of contiguous tracts, these being Numbers 2 and 4, Numbers 3 and 5, and Numbers 6 and 7. Number 1 is not contiguous to any other tract.

The lease, having a primary term of six years and ten days from its date and in which a one-half interest was assigned by Sun Oil Company to the Sohio Petroleum Company, contained in its paragraph 9 the following pertinent provisions: "* * * In the event that Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the fact relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. * * * After discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder, * * *."

In 1946 the lessees commenced the drilling of a well on property owned by one Charles Richard at a point about one-half mile west of Dr. Miller's tract Number 2. At a depth of 11,020 feet a porous Cristellaria sand was found, but it was not commercially productive. The well, known as Charles Richard Number 1, was completed in March 1947 as a gas producer from the Amphistegina sand at a depth of some 8,000 feet. Immediately thereafter it was shut in because of the lack of facilities for transporting the gas.

In March of 1950 the lessees completed a successful gas well on tract Number 4 belonging to Dr. Miller (adjoining and being south of his tract Number 2), it producing from the Amphistegina sand and being known as Miller B-1. This well was likewise shut in on completion.

During the latter part of 1950 an order by the Louisiana Conservation Commissioner created what was designated as the Richard and the Miller units (they were adjacent and included the major portions of Dr. Miller's tracts Numbers 2 and 4), each of which contained one of the mentioned wells. The wells were then placed on production; and since such time they have continuously produced in commercial quantities.

In June, 1951 and numerous times thereafter Dr. Miller demanded in writing of the Sun Oil Company and the Sohio Petroleum Company that they either develop those portions of his lands which were not within the units established by the Department of Conservation or execute written releases respecting them. Ultimately, specifically on November 5, 1953, such lessees granted a formal release and relinquish-

ment of their rights under the lease insofar as it covered tract Number 1 which contained 2,100 acres, more or less.

In a letter dated November 24, 1953, addressed to lessees, Dr. Miller acknowledged the release of tract Number 1. Also, therein he stated, among other things, as follows: "This letter is intended as the required 60 days' notice as provided for in our contract, calling upon you to resume development operations within such period, or be considered in default of your lease obligation."

The lessees did not undertake the commencement of drilling on any portion of lessor's lands within the specified 60 day period. Instead, on January 7, 1954, or approximately 44 days after the date of lessor's last mentioned letter, they began this litigation by instituting a suit, pursuant to the provisions of the Uniform Declaratory. Judgments Act (LSA–R.S. 13:4231 to 4246, inclusive), seeking a determination of their rights under the lease. Mainly, they prayed for a judgment declaring that "the said letter of November 24, 1953, directed to Plaintiffs by said Defendant * * * does not allege fact or facts constituting a breach of said lease and did not and could not serve as a demand or notice of default in accordance with or pursuant to paragraph 9 of said lease contract". In the alternative they prayed that the judgment to be rendered declare that (1) "on November 24, 1953, Plaintiffs had * * *

reasonably and properly developed the lands held under said lease in full compliance with all the express and implied requirements thereof" and (2) if additional drilling be required "Petitioners have a reasonable time, to be fixed by this Court, from and after final judgment herein, within which to commence such operations".

Answering, the defendant denied plaintiffs' right to the relief sought. In reconvention, he demanded (1) cancellation of plaintiffs' lease in its entirety and (2) in the alternative, that the lease be cancelled insofar as it bears upon nonproducing property.

The district court first considered plaintiffs' attack on defendant's letter of November 24, 1953, and it rendered a judgment declaring such communication to be ineffective and not constituting notice to lessees pursuant to paragraph 9 of the lease agreement. However, that judgment, on an appeal to this court by the defendant, was reversed and set aside, and the cause was remanded to the district court for a trial of the merits. See 229 La. 581, 86 So.2d 201.

Immediately following the remand the defendant filed a supplemental reconventional demand praying that he be awarded attorneys' fees of $15,000 and damages of $300,000. Later, he dismissed his damage claim as of nonsuit.

After a trial of the merits the district court decreed and declared that plaintiffs have a good, valid and existing lease as to tracts Numbers 2 and 4. The court further decreed that within a period of 90 days from the finality of its judgment (either by affirmance on appeal or by the lapse of all delays for appeal) the plaintiffs shall commence the drilling of a well to explore the Cristellaria sand (11,000 foot level) on some portion of tracts Numbers 3 and 5 and of another well for the same purpose on the area embraced in tracts Numbers 6 and 7; and that in default of those operations the lease as to such respective pairs of tracts shall be forfeited.

From the judgment defendant is prosecuting this appeal. Plaintiffs have neither appealed nor answered the appeal of the defendant.

Primarily, this litigation presents for determination the question of whether or not there was reasonable development of tracts Numbers 2 and 4, Numbers 3 and 5, and Numbers 6 and 7 (required by the expressed provisions of paragraph 9 of the lease agreement and by an implied condition of the contract) as of November 24, 1953—the date of Dr. Miller's formal demand for a resumption of drilling operations.

With reference to tracts Numbers 2 and 4 (containing a total of 402 acres, more or less) we are of the opinion, just as was the trial judge, that such question must be answered in the affirmative. As pointed out above lessees' wells designated as Charles Richard No. 1 and Miller B–1, located within the two Department of Conservation units that embraced the major portion of those tracts, began producing gas in commercial quantities from the Amphistegina sand during the latter part of 1950, and such production was continuous to the time of the trial. Also, it is noted that between 1950 and 1952, inclusive, the lessees participated in the drilling and completion of three unproductive wells to the 8,000 foot level outside (but in close proximity to) the Miller and Richard units. Again, in 1953 lessees drilled on defendant's tract Number 2, at a point immediately north of the Richard unit, to the Amphistegina sand (8,000 foot level). That well was similarly unproductive, and lessees abandoned it on August 5, 1953 (only three and one-half months prior to defendant's formal demand).

Directing attention to the above described drilling on and near tracts Numbers 2 and 4 lessees contend that such operations alone constituted full compliance with the express and implied development obligation assumed under their agreement, and were amply sufficient to maintain the lease in full force and effect, as to the remainder of the acreage (in this connection, as aforeshown, neither the remaining tracts Numbers 3 and 5 nor Numbers 6 and 7 are con-

tiguous to tracts 2 and 4—they are situated from one-half mile to two and one-quarter miles away). Our present jurisprudence does not support this contention.

■ In the comparatively recent case of Carter v. Arkansas Louisiana Gas Company, 213 La. 1028, 36 So.2d 26, 28, this court said:

"The law of this state is well settled that the main consideration of a mineral lease is the development of the leased premises for minerals, and that the lessee must develop with reasonable diligence or give up the contract; further, that as to what constitutes development and reasonable diligence on the part of the lessee must conform to, and be governed by, what is expected of persons of ordinary prudence under similar circumstances and conditions, having due regard for the interest of both contracting parties. * * *.

"Whether in any given case the lessee has sufficiently developed the leased property pursuant to the rule set out above, is a question of fact which must be resolved by a consideration of the facts and circumstances shown in the particular case. * * *."

And in the opinion of the Carter case we quoted with approval a pertinent excerpt from Fox Petroleum Company v. Booker, 123 Okl. 276, 253 P. 33, reading as follows:

"The principle, as we understand it, is that development of every part of the lease is an implied condition. Therefore, whether the undeveloped portion be a single tract remote from the rest, or a considerable portion of a very large tract, * * or the east one hundred acres of a tract of 160, it is an implied condition that the lessee will test every part. * * *"

Later, the above-stated principles were affirmed in Eota Realty Company, Inc. v. Carter Oil Company, 225 La. 790, 74 So.2d 30 and Wier v. Grubb, 228 La. 254, 82 So. 2d 1. See also Caddo Oil & Mining Company v. Producers' Oil Company, 134 La. 701, 64 So. 684, Prince v. Standard Oil Company of Louisiana, 147 La. 283, 84 So. 657, Stubbs v. Imperial Oil & Gas Products Company, 164 La. 689, 114 So. 595, and Nunley v. Shell Oil Company, La.App., 76 So.2d 111.

Because of factual differences, the decisions relied on by plaintiffs are not applicable here. Thus, in Ardis v. Texas Company, 155 La. 790, 99 So. 600, there were seventeen producing wells on a 450 acre tract, they having been drilled during the six year period between the granting of the lease and the filing of the suit. In Doiron v. Calcasieu Oil Company, Inc., 172 La. 553, 134 So. 742, the lessees, within 14 months prior to the filing of the suit, drilled and completed five wells on the involved 72 acre tract. In Louisiana Gas Lands, Inc. v. Burrow, 197 La. 275, 1 So.2d 518, the

80 acre leased tract contained two producing wells. In Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473, there were two wells on a 120 acre tract producing from a deep sand. Plaintiffs complained that no production had been obtained from a known shallower stratum. The court found that, in the drilling of such wells, unsuccessful tests of the shallow sands had been made; and it held that (in view of those tests) lessees had reasonably developed the leased lands. And in Sabatier v. Canal Oil Company, Inc., 202 La. 639, 12 So.2d 665, nine wells were drilled on a 100 arpent tract during a period of six years, one of them having been completed just four weeks prior to the institution of the suit.

With further reference to the above-mentioned remaining acreage (tracts Numbers 3, 5, 6 and 7 which contain a total of 906 acres, more or less) lessees conducted no operations on or near it, except to aid in the drilling of a dry hole in the northernmost part of tract Number 3. However, they do not contend that such single well satisfied their reasonable development obligation. Nor could they do so successfully. Firstly, the well was abandoned on September 24, 1952, or 14 months prior to the formal demand made by the defendant. Secondly, it was drilled to only the 8,000 foot level; whereas competent geological data in the possession of lessees before commencement of the opera-

tion indicated a strong possibility of obtaining production on tracts Numbers 3 and 5 from the 11,000 foot Cristellaria sand— data, the use of which might well have benefited both the plaintiffs and the defendant.

Plaintiffs do contend that the lease on tracts Numbers 3, 5, 6 and 7 is effective because a contract which they had with Fifteen Oil Company, entered into on December 31, 1953 (during the above-mentioned 60 day period), constituted compliance with the lessor's demand for development. The contention, in our opinion, is without merit. In the relied on contract (to which Dr. Miller was not a party) Fifteen Oil Company was merely granted the option of drilling on the Miller lease if and when it completed a well on a nearby tract of land (neither plaintiffs nor defendant had any interest therein) which it had previously obligated itself to begin drilling on or before March 24, 1954, for the British-American Oil Producing Company and other companies. The contract in no manner evidenced a binding obligation to develop any portion of the leased lands under consideration.

On this appeal the defendant takes the position that the trial judge erred in granting to plaintiffs, as prayed for alternatively by them, a period of 90 days from the finality of the judgment in which to commence the drilling of two wells on

tracts Numbers 3 and 5 and Numbers 6 and 7, respectively. In so ruling the judge, as shown by his written reasons for judgment, relied entirely on Parten v. Webb, 205 La. 799, 18 So.2d 198. Defendant's position is sound, for the decision in the Parten case is not controlling here. There the landowner gave notice to a sublessee of a failure to develop and demanded that it either drill the property or surrender the lease. Thirteen days thereafter drilling, which ultimately resulted in production, was commenced. This court refused to decree a cancellation of the lease, holding that the landowner was estopped to claim such relief in view of his demand for performance and the sublessees' compliance therewith. Here the plaintiffs did not comply with the defendant's 60 day development demand expressly provided for in the lease agreement. Moreover, there was no conduct on the part of this lessor which could give rise to a plea of estoppel.

■ The defendant further urges that he should be awarded attorneys' fees, under the provisions of LSA–R.S. 30:102, in the amount of $15,000. In support of such item there is in the record only the testimony of Dr. Miller that he agreed to pay that amount to his attorneys. This evidence, in our opinion, is not sufficient to establish the reasonable value of the legal services rendered. Accordingly, we shall dismiss the demand as of nonsuit. Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 and Seiber v. Ringgold, 231 La. 983, 93 So.2d 530.

For the reasons assigned the judgment appealed from is affirmed insofar as it declares and decrees that the oil, gas and mineral lease granted by Dr. Martin O. Miller to Sun Oil Company, of date July 18, 1945, is in full force and effect with respect to the following described property situated in Cameron Parish:

Tract No. 2. 240 acres, more or less, being described as the East one-half of Southeast Quarter (E½ of SE¼) and the West one-half of the East one-half (W½ of E½) of Section 1, Township 15 South, Range 5 West;

Tract No. 4. 162 acres, more or less, being the West one-half of East one-half (W½ of E½) of Section 12, Township 15 South, Range 5 West.

Otherwise such judgment is reversed and set aside, and there is now judgment in favor of Dr. Martin O. Miller and against the Sun Oil Company and the Sohio Petroleum Company decreeing the above-mentioned lease to be of no further force and effect (and ordering the cancellation and erasure thereof) insofar as it bears upon the following described property located in Cameron Parish:

Tract No. 3. 530 acres, more or less, being all of Section 11, Township 15 South, Range 5 West, save and ex-

cept the Northwest quarter of Northwest quarter (NW¼ of NW¼) and the East one-half of the Northeast quarter (E½ of NE¼);

Tract No. 5. 38 acres, more or less, being in fractional Section 14, Township 15 South, Range 5 West, described as beginning at the Northwest corner of Lot No. 1 of fractional NW¼ of NE¼ of Section 14, thence running South 14 chains and 13 links to the West end of Cow Island near a stake or U. S. Survey, thence North 85 degrees East 25 chains and 12 links to a post set by George O. Elms on said land, thence North to Section Line dividing Sections 11 and 14, thence West to point of beginning;

Tract No. 6. 160 acres, more or less, lying in the South one-half (S½) of fractional Section 14, Township 15 South, Range 5 West, bounded on the North by V. L. and C. P. Roberts, John Thibodeaux and James Bonsall, South by the South line of Section 14, East by Pierre Monte, and West by the West line of Section 14;

Tract No. 7. A tract of land containing 178 acres, more or less, and being the Western 178 acres of Section 23, Township 15 South, Range 5 West, bounded East by Horace Mhire, West by Henry McCall, and South by other lands of lessor not covered by this lease.

It is further ordered that the demand of Dr. Martin O. Miller for attorneys' fees be dismissed as of nonsuit.

The costs of the district court shall be paid in the proportions of two-thirds by plaintiffs and one-third by the defendant. All costs of this appeal shall be paid by plaintiffs.